Daniel H. Silverman *(pro hac vice forthcoming)*
dsilverman@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
769 Centre Street, Suite 207
Boston, MA 02130
Telephone: (202) 408-4600
*Counsel for Plaintiffs Don Copeland, Joseph Murray, Carol Smith, Patrick Whitney, Phillip Hague, Denise Fotis, Roxann Doriott, Bruce Mims, Lori Ably, Timothy Brown, Peter Costas, and Mike Ballard*
*and Proposed Lead Counsel for Indirect Purchaser Class*

Sarah Grossman-Swenson (SBN 259792)
Kimberley C. Weber (SBN 302894)
sgs@msh.law | kweber@msh.law
**MCCRACKEN STEMERMAN & HOLSBERRY, LLP**
475 14th Street, Suite 1200
Oakland, CA 94612
sgs@msh.law
kweber@msh.law
(415) 597-7200
*Local Counsel for Plaintiffs*
*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON COPELAND, JOSEPH MURRAY, CAROL SMITH, PATRICK WHITNEY, PHILLIP HAGUE, DENISE FOTIS, ROXANN DORIOTT, BRUCE MIMS, LORI ABLY, TIMOTHY BROWN, PETER COSTAS, AND MIKE BALLARD, on behalf of themselves and those similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>ENERGIZER HOLDINGS, INC.; AND WAL-MART, INC.,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u><br><br><u>CLASS ACTION</u> |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................. 1

II.     THE PARTIES ................................................................... 3

III.    JURISDICTION AND VENUE ........................................ 6

IV.     DIVISIONAL ASSIGNMENT ........................................ 7

V.      FACTUAL BACKGROUND ............................................ 7

      A.      The Disposable Battery Market ................................... 7

      B.      Walmart's dominance in retail markets makes it a critical relationship for disposable battery suppliers. ........................................ 9

      C.      Energizer and Walmart agree to the Scheme. ................ 10

      D.      Energizer and Walmart implement the Scheme. ............ 11

      E.      Energizer's price increases cannot be explained by market forces .......................... 16

      F.      The scheme benefited both Walmart and Energizer to the detriment of competition in the wholesale and retail markets for Energizer Battery Products ........................................ 17

VI.     THE SCHEME CAUSED AND CONTINUES TO CAUSE ANTITRUST INJURY TO CONSUMERS .............................. 18

VII.    MARKET POWER AND MARKET DEFINITION ........... 19

VIII.   ANTICOMPETITIVE EFFECTS .................................... 21

IX.     STATUTES OF LIMITATIONS DO NOT BAR PLAINTIFFS' CLAIMS .............. 22

      A.      Continuing Violation ................................................... 22

      B.      Fraudulent Concealment ............................................ 22

X.      EFFECT ON INTRASTATE AND INTERSTATE COMMERCE ............................. 24

XI.     CLASS ACTION ALLEGATIONS ................................. 24

XII.    COMPLIANCE WITH NOTICE AND DEMAND REQUIREMENTS ................. 26

XIII.   CAUSES OF ACTION .................................................... 26

      VIOLATIONS OF STATE ANTITRUST LAWS .................... 29

i

VIOLATIONS OF STATE CONSUMER PROTECTION LAWS .......................... 51

XIV.   PETITION FOR RELIEF .......................................................... 67

XV.   JURY DEMAND .................................................................... 68

1.     Plaintiffs Don Copeland, Joseph Murray, Carol Smith, Patrick Whitney, Phillip Hague, Denise Fotis, Roxann Doriott, Bruce Mims, Lori Ably, Timothy Brown, Peter Costas, and Mike Ballard ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure against Energizer Holdings, Inc. ("Energizer") and Wal-Mart Inc. ("Walmart") (collectively, "Defendants") for violating antitrust and consumer protection laws.

2.     Plaintiffs' claims concern agreements between Energizer, the largest manufacturer of disposable batteries sold in the U.S., and Walmart, the largest retailer of disposable batteries in the U.S., to inflate both wholesale and retail prices for Energizer disposable batteries and disposable-battery dominated lighting products (together, "Energizer Battery Products") above competitive levels.

## I.     <u>INTRODUCTION</u>

3.     Faced with a dismal market outlook for disposable batteries, Energizer and Walmart, Energizer's largest customer, agreed to a scheme (the "Scheme") to slow price decline and ensure that both companies could charge higher-than-competitive prices for Energizer Battery Products.

4.     The Scheme had two components, to which Energizer agreed under pressure from Walmart.

5.     First, Energizer agreed to inflate its wholesale prices for Energizer Battery Products to its direct purchasers who compete with Walmart. Direct purchasers from Energizer compete with Walmart to sell Energizer Battery Products at retail. The resulting wholesale price inflation enabled Walmart to elevate its retail prices for Energizer Battery Products above competitive levels. Energizer's inflated prices forced other direct purchasers to charge higher retail prices than they otherwise would have, thus passing on those wholesale price increases to consumers.

6.     Second, Energizer agreed to provide Walmart *additional* protection from price competition. Energizer agreed not only to inflate its wholesale prices for Energizer Battery Products, but also to require its direct purchasers to charge their retail customers no less than the price Walmart charged for Energizer Battery Products or risk additional wholesale price increases or be cut off as retailers of Energizer Battery Products.

7.      In furtherance of the second component of the Scheme, Energizer created a team known internally as Project Atlas. Project Atlas policed Energizer's direct purchase customers' retail prices and warned retailers that tried to undersell Walmart that they had to match or exceed Walmart's prices. If the retailers nevertheless charged lower prices than Walmart, Energizer would further inflate the wholesale prices it charged to those direct purchasers until it was no longer economically feasible for them to compete with Walmart.

8.      These two components – Energizer's agreement with Walmart (1) to inflate its wholesale prices for Energizer Battery Products to direct purchasers other than Walmart and (2) to prevent its wholesale customers from charging retail prices below Walmart's – formed the Scheme.

9.      The Scheme was facilitated by Energizer's power in the market for disposable batteries – over 50% – and its duopolistic power with Duracell – together they control about 85% of the market. In a duopolistic market, a price increase by the largest firm – here, Energizer – will often be met by a comparable price increase by the second-largest firm – here, Duracell, particularly if a dominant retailer – Walmart – limits Duracell's ability to gain market share by competing on price.

10.     The Scheme artificially inflated Energizer's and Duracell's prices. Walmart is a huge, national retail outlet for Battery Products. To support the Scheme, Walmart offered Duracell battery products at prices that would not undermine its inflated prices for Energizer Battery Products. That deprived Duracell of a crucial opportunity to compete with Energizer for market share based on price. The Scheme thus decreased Duracell's incentive to compete with Energizer on price and increased Duracell's incentive to match Energizer's inflated prices. The result was that Energizer's and Duracell's wholesale prices were higher than they would have been without the Scheme.

11.     The Scheme was anticompetitive. First, it harmed competition at the retail level by eliminating retail price competition between Walmart and other retailers for the sale of Energizer Battery Products. The Scheme focused on impairing competition from discount retailers – in particular those who could distribute batteries more efficiently by selling them on the internet. This directly harmed consumers by inflating retail prices for Energizer Battery Products, both those charged by Walmart as well as those charged by other retailers. Second, the Scheme also reduced competition on the wholesale level by reducing competition between Energizer and its primary rival – Duracell,

1   increasing Energizer's market power, and thus the prices it charged to retailers. This resulted in

2   inflated wholesale prices for both Energizer Battery Products and Duracell battery products which

3   were then passed on to consumers.

4          12.     As a result of the Scheme, Plaintiffs and other consumers paid inflated prices for

5   Energizer Battery Products.

6          13.     Plaintiffs bring this action on behalf of themselves individually and on behalf of an

7   Indirect Purchaser Plaintiff ("IPP") class ("the Class" or the "Indirect Purchase Plaintiff Class")

8   consisting of all persons and entities in Repealer Jurisdictions who indirectly purchased Energizer

9   Battery Products, other than for resale, at any time during the period from January 1, 2018 through

10  and until the anticompetitive effects of Defendants' challenged conduct cease (the "Class Period"). A

11  Repealer Jurisdiction is a state, district, or territory that has repealed the bar on indirect purchaser

12  plaintiffs recovering under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and includes: Arizona,

13  California, Connecticut, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine,

14  Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada,

15  New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode

16  Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

17  Plaintiffs bring this action against Defendants for injunctive relief under Section 1 of the Sherman Act,

18  15 U.S.C. § 1, and for treble damages under the antitrust laws and consumer protection laws of the

19  several states, and demand a trial by jury.

20                              **II.    THE PARTIES**

21         14.     Plaintiff Don Copeland is a resident of San Francisco, California and a citizen of the

22  United States. Throughout the Class Period defined below, Mr. Copeland has purchased Energizer

23  Battery Products from Amazon for their own use and not for resale. Mr. Copeland has purchased

24  Energizer products in California. Mr. Copeland has paid supracompetitive prices for each Energizer

25  Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore

26  suffered antitrust injury.

27         15.     Plaintiff Joseph Murray is a resident of Palm Beach Gardens, Florida and a citizen of

28  the United States. Throughout the Class Period defined below, Mr. Murray has purchased Energizer

Battery Products from Publix and Home Depot for their own use and not for resale. Mr. Murray has purchased Energizer products in Florida. Mr. Murray has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

16.     Plaintiff Carol Smith is a resident of Chicago, Illinois and a citizen of the United States. Throughout the Class Period defined below, Ms. Smith has purchased Energizer Battery Products from Fingerhut for their own use and not for resale. Ms. Smith has purchased Energizer products in Illinois. Ms. Smith has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

17.     Plaintiff Patrick Whitney is a resident of Cambridge, Massachusetts and a citizen of the United States. Throughout the Class Period defined below, Mr. Whitney has purchased Energizer Battery Products from Home Depot for their own use and not for resale. Mr. Whitney has purchased Energizer products in Massachusetts. Mr. Whitney has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

18.     Plaintiff Phillip Hague is a resident of Oakland, Maine and a citizen of the United States. Throughout the Class Period defined below, Mr. Hague has purchased Energizer Battery Products from Amazon for their own use and not for resale. Mr. Hague has purchased Energizer products in Maine. Mr. Hague has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

19.     Plaintiff Denise Fotis is a resident of Canton, Michigan and a citizen of the United States. Throughout the Class Period defined below, Ms. Fotis has purchased Energizer Battery Products from Lowe's Home Improvement and Meijers for their own use and not for resale. Ms. Fotis has purchased Energizer products in Michigan. Ms. Fotis has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

20.     Plaintiff Roxann Doriott is a resident of West Saint Paul, Minnesota and a citizen of

the United States. Throughout the Class Period defined below, Ms. Doriott has purchased Energizer Battery Products from Target for their own use and not for resale. Ms. Doriott has purchased Energizer products in Minnesota. Ms. Doriott has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

21.     Plaintiff Bruce Mims is a resident of Cape Girardeau, Missouri and a citizen of the United States. Throughout the Class Period defined below, Mr. Mims has purchased Energizer Battery Products from Menard's for their own use and not for resale. Mr. Mims has purchased Energizer products in Missouri. Mr. Mims has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

22.     Plaintiff Lori Ably is a resident of Helena, Montana and a citizen of the United States. Throughout the Class Period defined below, Ms. Ably has purchased Energizer Battery Products from Harbor Freight, Super One, Winco, and Safeway for their own use and not for resale. Ms. Ably has purchased Energizer products in Montana. Ms. Ably has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

23.     Plaintiff Timothy Brown is a resident of Honeoye, New York and a citizen of the United States. Throughout the Class Period defined below, Mr. Brown has purchased Energizer Battery Products from Amazon for their own use and not for resale. Mr. Brown has purchased Energizer products in New York. Mr. Brown has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

24.     Plaintiff Peter Costas is a resident of Newport, Vermont and a citizen of the United States. Throughout the Class Period defined below, Mr. Costas has purchased Energizer Battery Products from Home Depot and Pick and Shovel for their own use and not for resale. Mr. Costas has purchased Energizer products in Vermont and in New Hampshire. Mr. Costas has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations

alleged in this Complaint and has therefore suffered antitrust injury.

25. Plaintiff Mike Ballard is a resident of Barboursville, West Virginia and a citizen of the United States. Throughout the Class Period defined below, Mr. Ballard has purchased Energizer Battery Products from Home Depot for their own use and not for resale. Mr. Ballard has purchased Energizer products in West Virginia. Mr. Ballard has paid supracompetitive prices for each Energizer Battery Product they purchased as a result of the violations alleged in this Complaint and has therefore suffered antitrust injury.

26. Defendant Energizer Holdings, Inc. ("Energizer") is a leading manufacturer of disposable batteries based in St. Louis, Missouri.

27. Defendant Wal-Mart Inc. ("Walmart") is the largest company in the world by revenue and operates thousands of retail stores in the United States. Walmart is headquartered in Bentonville, Arkansas. Walmart's Global eCommerce division is based in San Bruno, California.

## III.    JURISDICTION AND VENUE

28. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action involving common questions of law or fact in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; there are more than one hundred members of the class; and at least one member of the class is a citizen of a state different from that of one of the Defendants.

29. Alternatively, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 4, 15(a) and 26, and 28 U.S.C. §§ 1331 and 1337, because this action alleges violations of section 1 of the Sherman Act, 15 U.S.C. §§ 1, and seeks declaratory and equitable relief for these violations.

30. The Court possesses supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

31. Venue is proper in this Court pursuant to, among other statutes, § 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b)(1)-(2) because Defendants regularly transact business within this District, a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and a substantial portion of the affected interstate trade and commerce discussed below has

been carried out in this District. In particular, Defendant Wal-Mart's eCommerce division is located in this District, and Walmart purchased and sold Energizer Battery Products at stores within this District. In addition, Defendants have directed their conduct towards discount retailers located in California, as detailed below.

32. This Court has personal jurisdiction over Defendants because during the Class Period Defendants marketed and sold Energizer Batteries in this district and have had substantial contacts within this District in furtherance of the anticompetitive activity alleged herein.

## IV. DIVISIONAL ASSIGNMENT

33. Assignment is proper to the San Francisco or Oakland Division of this District under Local Rule 3-2(c)-(e) because Plaintiff Don Copeland resides and purchases Energizer Battery products in San Francisco, California, and a substantial part of the events giving rise to Plaintiffs' claims occurred in San Mateo County because Walmart's Global eCommerce division is located in San Mateo County. Under Local Rule 3-2(d), "all civil actions that arise in the count[y] of … San Mateo … shall be assigned to the San Francisco Division or the Oakland Division." A central part of the Scheme involved eliminating price disruption to Walmart's Global eCommerce platform, and Plaintiffs will likely have evidentiary support after a reasonable opportunity for further investigation or discovery to show that the creation and enforcement of Defendants' agreement involved Walmart representatives working out of the Global eCommerce division in San Bruno, California, which is located in San Mateo County.

## V. FACTUAL BACKGROUND

### A. The Disposable Battery Market

34. Disposable batteries are single-use power sources and are typically powered by alkaline or lithium. Disposable batteries come in standard sizes (AA, AAA, or 123), defined according to standards adopted by the American National Standards Institute or International Electrotechnical Commission. Disposable batteries are used in toys, flashlights, remote controls, smoke detectors, and some power tools. Disposable batteries[1] are a mature product market that has seen little innovation in

---

[1] Unless otherwise specific, the term "batteries" will refer to disposable batteries throughout this Complaint.

1   the last ten years or more.

2       35.    The disposable batteries industry is characterized by high barriers to entry. Many

3   disposable batteries contain cobalt, lithium and graphite that are considered critical minerals by the

4   United States Geological Survey, which indicates they have a high supply risk potential and no easy

5   substitutes.

6       36.    Safety concerns and regulations impose additional barriers to entry. Disposable

7   batteries are manufactured using hazardous materials including lead and mercury. As a result, the

8   waste from battery manufacturing creates costly environmental contamination problems, which

9   require large investments to mitigate.

10      37.    Advertising is another barrier to entry for new entrants into established markets such

11  as the disposable battery market. Energizer has invested hundreds of millions of dollars in advertising

12  to build its brand. Energizer spends an estimated $70-80 million a year in advertising, principally to

13  distinguish itself from Duracell, its chief rival. Energizer and Duracell together account for about 85%

14  percent of total U.S. disposable battery sales, and Energizer alone accounts for over 50% of those

15  sales. Each company has market power.

16      38.    The recent market outlook for disposable batteries has been bleak. The conventional

17  wisdom is that with advances in technologies and the rising popularity of smartphones and other

18  portable devices for playing videogames, disposable battery use will increasingly be limited to

19  flashlights, smoke alarms, and a few other low-tech applications.

20      39.    High technology and advanced circuitry increasingly produce smaller consumer

21  devices that are powered with rechargeable or renewable power sources, further limiting disposable

22  battery use.

23      40.    Consumer demand for disposable batteries has also been dampened by environmental

24  concerns. Many consumers prefer rechargeable batteries to protect the environment, and scientific

25  studies have concluded that the use of rechargeable batteries should be mostly encouraged for high

26  consumption devices such as cameras and electronic toys.

27      41.    Disposable batteries thus face a declining market outlook and have long been predicted

28  to lose sales to renewable batteries or to be displaced by new technology in devices that do not require

8

batteries to operate. According to a news report, "These trends—lower power consumption, better and cheaper rechargeables, new power sources—are squeezing what used to be a lucrative market. Remote controls for televisions, for example, used to be powered by batteries. Now they can be an app on a mobile phone."[2]

**B.    Walmart's dominance in retail markets makes it a critical relationship for disposable battery suppliers.**

42.    At the retail level for Battery Products, there is a single dominant firm, Walmart.

43.    Walmart is the only retailer that is large enough for Energizer to reference in its annual SEC filings: "Although a large percentage of our sales are attributable to a relatively small number of retail customers, in fiscal year 2020, only Wal-Mart Stores, Inc. accounted for ten percent or more (14.1%) of the Company's annual sales."

44.    Walmart has historically been a large part of Energizer's revenues.

45.    In 2013, Energizer lost an exclusive contract with Walmart to supply batteries to Walmart's discount warehouse chain, Sam's Club.

46.    The effect that losing the contract had on Energizer's sales illustrates Walmart's dominance as a retailer and its importance to Energizer as a client.

//////////

/////////

////////

///////

//////

/////

////

///

//

/

---

[2] "Out of Juice," The Economist (January 18, 2014); https://www.economist.com/business/2014/01/18/out-of-juice

47.     As the below table illustrates, the year before losing the contract, Walmart purchases constituted 20% of Energizer's overall sales. Just one year later, that percentage dropped to 13.3%; the next, to 8.5%.

| Year | % Sales to Walmart |
|------|--------------------|
| 2012 | 20.0 |
| 2013 | 13.3 |
| 2014 | 8.5 |
| 2015 | 10.0 |
| 2016 | 10.4 |
| 2017 | 12.1 |
| 2018 | 11.5 |
| 2019 | 13.8 |
| 2020 | 14.1 |
| 2021 | 13.7 |

48.     The drops in sales to Walmart had corresponding impacts on Energizer's bottom line: Energizer missed earnings and profit estimates in 2014 and 2015, and its share price suffered.

**C.     Energizer and Walmart agree to the Scheme.**

49.     As early as January 2018, Walmart and Energizer again agreed to a deal that would give Energizer preferential treatment in Walmart's stores, and the downward trend reversed. As illustrated above, after going as low as 8.5%, Energizer's Walmart sales rebounded to around 14% of all Energizer sales starting in 2019.

50.     Walmart and Energizer's agreement extended beyond Walmart giving Energizer Battery Products preferential treatment at its stores. Under pressure from Walmart, Energizer agreed to the Scheme, which shielded Walmart from price competition for Energizer Battery Products and

1  allowed both companies to charge supracompetitive prices.

2      51.     The Scheme had two components. *First*, Energizer agreed with Walmart to artificially

3  inflate the wholesale prices it charged to Walmart's competitors for Energizer Battery Products to

4  prevent them from undercutting Walmart's retail prices. *Second*, Energizer agreed with Walmart to

5  monitor Walmart's competitors to ensure that they did not undercut Walmart's retail price for

6  Energizer Battery Products and to discipline those that did.

7      52.     Energizer created a group called Project Atlas to fulfill its obligations to Walmart under

8  the agreement. Project Atlas policed Energizer's customers' retail prices and raised Energizer's

9  wholesale prices as necessary to force Energizer's customers to maintain retail prices that did not

10  undercut Walmart's.

11      **D.     Energizer and Walmart implement the Scheme.**

12      53.     The Scheme has been in effect from as early as January 2018 and continues to the

13  present (the "Relevant Time Period").

14      54.     By April 2018, Energizer had increased its prices by over 8% from the prior year.

15      55.     That same year, at Walmart's behest, Energizer's Project Atlas policed Walmart's

16  competitor's retail prices for Energizer Battery Products and disciplined retailers who undersold

17  Walmart, in furtherance of the Scheme.

18      56.     The experience of Portable Power, an online discount retailer that attempted to undercut

19  Walmart's prices, illustrates how Energizer targeted retailers for price increases pursuant to its

20  agreement with Walmart.

21      57.     For example, in November 2018, Project Atlas disciplined Portable Power for its

22  pricing of Energizer headlamps, an Energizer Battery Product sold by Walmart and, at that time,

23  Portable Power.

24      58.     Acting on complaints from Walmart, Energizer raised its wholesale prices for

25  headlamps to Portable Power to force Portable Power to raise its retail prices to match or exceed

26  Walmart's.

27      59.     As explained in an internal email sent by Energizer manager Jeffrey Stoll, Energizer

28  had received complaints from Walmart regarding "disruptive pricing on Amazon & Wal-Mart.com on

headlights and specialty batteries."[3] Walmart asked Energizer what it was doing to "resolve" the issue.

60.  Mr. Stoll mentioned Portable Power by name as a driver of the "disruptive pricing."

61.  Mr. Stoll's email highlighted Portable Power as selling at "disruptive" (i.e. lower and more competitive) prices and noted the link between reining in Portable Power's retail pricing and Energizer's efforts to maintain higher price across retail distribution channels.

62.  Energizer recognized the disruption that competitors such as Portable Power would have on Walmart's business and sales of Energizer Battery Products generally. Raising prices to Portable Power and its other direct purchasers would have the effect of diminishing competition in the retail market, to the benefit of Walmart. Energizer understood that raising its wholesale prices to Walmart's competitors would increase retail prices.

63.  Energizer explained that, with headlamps as well other Energizer Battery Products, "we are selling to Portable Power, Inc. at [wholesale] pricing that would allow them to be disruptive on e-commerce.  Anything we can do to influence pricing with Portable Power will be key to reducing the disruption in the [North American] market."

64.  To bring Portable Power's retail pricing up to the level of Walmart, Energizer raised its wholesale prices to Portable Power for headlamps by about 50-85% for certain models, as illustrated by the below spreadsheet Energizer sent Portable Power in November 2018:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| HDA32E.1 NA  VISION HEADLIGHT | 98165982 | E300276500 | 10/01/18 | 09/30/19 | $5.00 | $7.68 | $2.68 | Increase |
| HDB32E.1 NA  VISION HD HEADLIGHT | 98165982 | E300276800 | 10/01/18 | 09/30/19 | $6.00 | $9.84 | $3.84 | Increase |
| HDBIN32E.1 NA  VISION HD IND HEADLGT | 98165982 | E300423100 | 10/01/18 | 09/30/19 | $6.00 | $9.84 | $3.84 | Increase |
| HDC32E.1 NA  VISION HD+ HEADLIGHT | 98165982 | E300277100 | 10/01/18 | 09/30/19 | $7.00 | $13.02 | $6.02 | Increase |
| HDD32E.1 NA  VISION HD+ FOCUS HEADLIG | 98165982 | E300277400 | 10/01/18 | 09/30/19 | $8.00 | $15.02 | $7.02 | Increase |
| HDDIN32E.1  VISION HD+FOCUS IND HDL | 98165982 | E300423200 | 10/01/18 | 09/30/19 | $8.00 | $15.02 | $7.02 | Increase |

65.  At that time, November 2018, Energizer's Stephanie Rice, a sales representative that worked with Portable Power, told Portable Power's CEO that Energizer was raising Portable Power's prices to align them with Energizer's pricing policy. Energizer did not tell Portable Power that the price increases Energizer was imposing were because of Energizer's agreement with Walmart.

66.  This policy was new to Portable Power, which had purchased Battery Products from Energizer for years, and represented a change in Energizer's pricing policy.

---

[3] Wal-Mart.com, like Amazon, is a marketplace that allows third-party retailers to sell products.

67.     Energizer also began rolling out widespread wholesale price increases for direct purchasers other than Walmart in accordance with the Scheme.

68.     For example, in the second quarter of 2019, Energizer announced an 8% price increase for its Energizer® Max Alkaline Batteries and Energizer® Ultimate Lithium Batteries.

69.     This announced price increase enabled Walmart to increase its prices for these batteries by an even greater margin: nearly 20% in the third quarter of 2019, and by nearly 40% by the first quarter of 2020.

70.     For example, in May 2019, the month before the price increase was announced, Walmart priced a 24-pack of Energizer Max Alkaline AAA batteries at $12.78. By July 2019, just two months later, Walmart had raised the price to $16.24, *a 27-percent increase*. This price change was non-transitory; the average price of this product in the 12 months before the wholesale price increase was $12.71, and the average price of this product in the 12 months after the wholesale price increase was $16.18. Figure 1 shows the quarterly retail prices of this product.

FIGURE 1: ENERGIZER MAX ALKALINE AAA 24 PACK WALMART RETAIL PRICE



71.     Energizer continued to impose similar price hikes at regular intervals in 2020 and 2021.

72.     In September and October 2020, Energizer raised prices across its product lines by at least 10%; in April 2021, Energizer again raised prices on its MAX line of batteries, this time by at

least 10%; and in June 2021, Energizer raised prices across its household battery portfolio by 11%.

73.    Energizer implemented its price increases because of its agreement with Walmart and at Walmart's behest.

74.    Energizer understood that raising its wholesale prices to its customers would, in turn, increase the retail prices its customers charged. These price increases were intended to force retailers competing with Walmart to increase their retail prices for Energizer Battery Products up to or above Walmart's.

75.    In January 2021, Energizer again targeted Portable Power for underselling Walmart's retail prices for Energizer Battery Products.

76.    Ms. Rice forwarded an email from Energizer's Project Atlas team to Portable Power's CEO that informed him that Portable Power was among the top-ten Amazon sellers "in violation" of Energizer's "pricing policies"—*i.e.*, that Portable Power's retail prices were below the price floor Energizer had set with Walmart—for December 2020.

77.    The email included the following chart reflecting the "top ten" violators (which refers to Portable Power under the name "HB Wholesale"):

Top Amazon Sellers in Violation for December 2020

| # | SELLER | STATUS | VIOLATIONS | AVG % | ALEXA | RATINGS | LAST ACTION | DATE |
|---|--------|--------|------------|-------|-------|---------|-------------|------|
| 1 | amazon.com | Authorized [amazon | 274 | -13.6% | 10 | N/A | New | --- |
| 2 | bestdealssupply.com | Unauthorized Indire | 127 | -19.0% | NA | N/A | Escalated Enforcement - New | 08/01/20 |
| 3 | MYBATTERYSUPPLIER [Amazon US] | Unauthorized Indire | 109 | -11.6% | NA | 379910 | Escalated Enforcement - New | 08/01/20 |
| 4 | National Deals [Amazon US] | Unauthorized Indire | 68 | -22.1% | NA | 85184 | Letter Sent - New | 12/15/20 |
| 5 | Another Day in ParadisePCB [Amazon US] | Unauthorized Indire | 34 | -12.8% | NA | 2294 | New | --- |
| 6 | Tzohar Inc [Amazon US] | Unauthorized Indire | 31 | -15.9% | NA | 1257 | Letter Sent - New | 11/20/20 |
| 7 | Quiver [Amazon US] | Authorized | 17 | -24.6% | NA | 85647 | New | --- |
| 8 | JustCalculators [Amazon US] | Unauthorized Indire | 14 | -39.8% | NA | 46232 | Letter Sent - New | 10/20/20 |
| 9 | 718 Sold It [Amazon US] | Unauthorized Indire | 14 | -7.6% | NA | 6347 | Letter Sent - New | 12/14/20 |
| 10 | HB Wholesale [Amazon US] | Unauthorized Direc | 10 | -26.5% | NA | 48175 | New | --- |

78.    The chart shows that Energizer's Project Atlas had a system in place to monitor and discipline its direct-purchaser retailers: it sent letters, escalated enforcement, and as Portable Power's experience illustrates, subjected noncompliant sellers to repeated price increases.

79.    Portable Power's experience illustrates how Project Atlas worked. An internal Energizer email communication from Energizer's Colby Mowery, a member of Energizer's trade and price strategy team, to Energizer manager Brad Sellenriek attaching the "top-ten" list confirmed that Energizer's Project Atlas had contacted Portable Power about its retail pricing of Energizer Battery Products because of Energizer's agreement with Walmart.

80.    Mr. Sellenriek forwarded the message to Stephanie Rice, Energizer's sales representative for Portable Power, and clarified that Portable Power was being asked to raise its retail prices: "Stephanie - Please see the latest situation on [Portable Power]. Before we shut them off on these sku's, let's see if he's willing [to] revise his pricing and get him off the radar."

81.    Following these messages, in January 2021, Energizer increased various wholesale prices to Portable Power for Energizer Battery Products, in accordance with its agreement with Walmart. Energizer also told Portable Power the minimum price it had to charge—Walmart's price—to avoid being terminated as a distributor.

82.    Energizer repeatedly warned Portable Power that if it did not increase its retail prices to match or exceed Walmart's, it would be cut off from purchasing Battery Products from Energizer.

83.    On or about February 1, 2021, Ms. Rice warned Portable Power that because Portable Power had not raised its retail prices to match Walmart's, Energizer would stop shipping certain Energizer Battery Products to Portable Power. When Portable Power's CEO discussed Energizer's decision with Ms. Rice later that day, she admitted that Energizer had adjusted its pricing policies at Walmart's request, telling him, "This is 1000% about Walmart and wanting the best price."

84.    According to Ms. Rice, Energizer inflated its wholesale prices for Energizer Battery Products to Portable Power and other direct purchasers to force them to sell at or above Walmart's retail prices.

85.    Later that month, Energizer again quoted wholesale prices to Portable Power that were based on Walmart's prices, this time for Ray-O-Vac hearing aid batteries. Ms. Rice again said that Energizer was requiring Portable Power to match a floor created by Walmart's price for these products. In an email message dated February 16, 2021, she offered Portable Power a wholesale price that would allow it a 20% mark up if it matched Walmart's retail price: "If the items are priced to match the

Walmart selling price minus 20% would that work for you?" Her email included the following chart (included below as Figure 2) which shows how the prices offered to Portable Power by Energizer were determined via reference to Walmart's retail price.

FIGURE 2

| Rayovac Part | Description | List | Case Qty | Matrix cost | Walmart selling price | Seller | 20% | Walmart selling price minus 20% | |
|---|---|---|---|---|---|---|---|---|---|
| 10-16 | RAYOVAC RETAIL SIZE 10 16PK | | 24 | $8.80 | $10.81 | Walmart direct | $2.16 | $8.65 | |
| 10-24 | RAYOVAC RETAIL SIZE 10 24PK | | 24 | $12.72 | $18.76 | Walmart direct | $3.75 | $15.01 | |
| 10-48 | RAYOVAC RETAIL SIZE 10 48PK | | 6 | $24.48 | $29.75 | Local Battery | $5.95 | $23.80 | |
| 10-8 | RAYOVAC RETAIL SIZE 10 8PK | | 24 | $4.56 | $4.99 | Walmart direct | $1.00 | $3.99 | |
| 13-16 | RAYOVAC RETAIL SIZE 13 16PK | | 24 | $7.68 | $7.49 | Walmart direct | $1.50 | $5.99 | |
| 13-24 | RAYOVAC RETAIL SIZE 13 24PK | | 24 | $10.80 | $9.79 | Walmart direct | $1.96 | $7.83 | |
| 13-48 | RAYOVAC RETAIL SIZE 13 48PK | | 6 | $18.72 | $17.99 | DZEE Suppliers | $3.60 | $14.39 | |
| 13-8 | RAYOVAC RETAIL SIZE 13 8PK | | 24 | $3.76 | $6.87 | Walmart direct | $1.37 | $5.50 | |
| 312-16 | RAYOVAC RETAIL SIZE 312 16PK | | 24 | $7.68 | $7.49 | Walmart direct | $1.50 | $5.99 | |
| 312-24 | RAYOVAC RETAIL SIZE 312 24PK | | 24 | $11.04 | $9.79 | Walmart direct | $1.96 | $7.83 | |
| 312-48 | RAYOVAC RETAIL SIZE 312 48PK | | 6 | $21.12 | $16.89 | Walmart direct | $3.38 | $13.51 | |
| 312-6 | RAYOVAC RETAIL SIZE 312 6PK | | 24 | $3.12 | $5.87 | Walmart direct | $1.17 | $4.70 | |
| 312-8 | RAYOVAC RETAIL SIZE 312 8PK | | 24 | $4.00 | $6.87 | Walmart direct | $1.37 | $5.50 | |
| 13-6 | Not in bid tool | $4.86 | | | $5.87 | Walmart direct | $1.17 | $4.70 | Need to add to bid tool |
| 13-32 | Not in bid tool | $18.88 | | | $16.97 | Walmart direct | $3.39 | $13.58 | Need to add to bid tool |

86.    Ms. Rice was offering a wholesale price to Portable Power that was 20% below Walmart's retail price so that Portable Power could have a sufficient markup if it set its retail prices at or above Walmart's retail prices.

**E.    Energizer's price increases cannot be explained by market forces.**

87.    Energizer's price increases cannot be explained by competitive market forces, such as cost increases, demand increases, or general inflation.

88.    Energizer's wholesale price cannot be explained by increased costs. For example, the price of lithium was flat or declining for the periods before and after the announced price increases. The cost of the four other commodities that make up 90% of the inputs to disposable batteries—steel, graphite, manganese, and zinc—also do not explain Energizer's price increases.

89.    Nor can Energizer's wholesale price increases be explained by increased demand for disposable batteries. Energizer Battery Product prices have been increasing in the last four or five years despite a reduction in demand because of competition from disruptive technologies, such as

16

1    rechargeable batteries.

2         90.    Nor can the price increases be explained by general inflation. Inflation was under 2%

3    when Energizer announced its 2019 and 2020 price increases, 2.6% in March 2021, when Energizer

4    announced its 10% price increase, and 5% in May 2021, when it announced its 11% price increase.

5         91.    On April 17, 2018, the *Wall Street Journal* reported that price increases at both

6    Energizer and Duracell—together controlling 80% of the market for Alkaline batteries—were at odds

7    with competitive market forces: "Batteries on average cost 8.2% more than a year ago, while prices in

8    the overall household-care segment rose only 1.8%, according to Nielsen. At a time when prices are

9    stagnating on everything from toilet paper to diapers, such pricing power for a product that is

10   increasingly obsolete has confounded shoppers."

11        **F.    The scheme benefited both Walmart and Energizer to the detriment of**
12   **competition in the wholesale and retail markets for Energizer Battery Products.**

13        92.    The Scheme benefited both Walmart and Energizer. First, Energizer agreed to inflate

14   its wholesale prices to Walmart's competitors. That enabled Energizer to enjoy inflated prices. It also

15   enabled Walmart to artificially inflate its retail prices for Energizer Battery Products without being

16   undercut by other retail sellers of Energizer Battery Products.

17        93.    Second, Energizer agreed to prevent its direct purchasers from undercutting Walmart's

18   retail prices. Energizer further inflated its prices to retailers that tried to compete with Walmart on

19   price, ultimately driving them out of the market if they did not comply. That enabled Walmart to

20   artificially inflate its prices by an additional increment.

21        94.    The greatest potential threat to the Scheme was Duracell. It could have attempted to

22   steal market share from Energizer through lower pricing. But Walmart deprived Duracell of the single

23   largest opportunity to compete: Walmart stores. Walmart protected its own inflated prices for

24   Energizer Battery Products by charging similarly inflated prices for Duracell battery products. That

25   benefited Walmart. It also protected Energizer from its greatest competitive threat. With Walmart

26   stores unavailable for price competition, Duracell had incentive to charge higher prices to its direct

27   purchasers than it would have charged in the absence of the Scheme.

28   /

17

95.     In this way, the Scheme facilitated inflated duopolistic pricing and vice-versa. On one hand, the anticompetitive agreement supported higher duopolistic prices than Energizer and Duracell would have otherwise charged. The Scheme distorted Duracell's incentives, making it less attractive for Duracell to compete on price and more attractive to match Energizer's prices. On the other hand, the duopolistic Battery Products market was particularly susceptible to the Scheme. Conspiracies to artificially inflate prices are more likely to succeed and more stable in markets with small numbers of dominant market players.

96.     Figure 3, below shows that Duracell has not, in fact, stolen market share in response to the Scheme:

FIGURE 3



VI.     **THE SCHEME CAUSED AND CONTINUES TO CAUSE ANTITRUST INJURY TO CONSUMERS**

97.     Given Energizer's wholesale prices, Portable Power and other retailers could not compete with Walmart's retail prices. Once Energizer raised its wholesale prices to Portable Power and other retailers, they could no longer offer disposable batteries for sale at prices lower than Walmart's. As a result, retailers who purchased batteries from Energizer directly passed on the

resulting overcharges to consumers, including the Members of the Class.

98.    For example, Portable Power historically priced at around a 10 to 20% discount on Walmart's sales price. For some items, Portable Power was undercutting Walmart by about 50%. This discount to retail customers provided by Portable Power and other direct purchasers from Energizer has disappeared, resulting in higher prices to Plaintiffs and Class members for disposable batteries.

99.    As a consequence of Defendants' anticompetitive conduct as alleged herein, during the Class Period defined below, Plaintiffs and other members of the Class indirectly purchased Energizer Battery Products at artificially inflated prices, which were substantially higher than they would have paid absent Defendants' unlawful conduct. Plaintiffs and members of the Class have sustained losses and damages to their business and property in the form of paying artificially inflated prices ("overcharges"), which are the type of injuries that the antitrust laws were designed to prevent and are a direct and proximate result of Defendants' unlawful conduct. Therefore, Defendants have caused antitrust injury to Plaintiffs and all members of the Class.

## VII.    MARKET POWER AND MARKET DEFINITION

100.    The relevant product market consists of the market for disposable battery products. There are no reasonable substitutes for disposable batteries for the vast majority of uses for which they are purchased. Rechargeable batteries are not reasonable substitutes for disposable batteries because they are much more expensive and do not hold a charge as long. This makes them an impractical choice for the types of applications for which disposable batteries are usually used, particularly applications that require low power output or infrequent power draws for a longer period of time, such as for smoke alarms, children's toys, and remote controls.

101.    The relevant geographic market consists of the United States, and its territories, possessions, and the Commonwealth of Puerto Rico (in conjunction with the relevant product market above, the "Relevant Market").

102.    Energizer has substantial market share within the Relevant Market, possessing more than 50% market share. Most of the rest of the market belongs to Duracell. Along with Duracell, Energizer has duopoly power, as explained above.

103.    Energizer's power in the market for disposable batteries also gives it power over price

19

– and hence market power – over disposable battery dominated lighting products, such as headlamps and flashlights, because disposable batteries are their largest cost component.

104.    Direct evidence establishes Defendants' combined market power in the Relevant Market and over all disposable-battery dominated lighting products. That direct evidence includes Defendants' ability to profitably and sustainably inflate prices above competitive levels. It also includes: (1) Energizer's numerous large price increases since January 2018 that it implemented under its agreement with Walmart that cannot be explained based on competitive forces; and (2) the decrease in the number of retail sellers that purchase disposable batteries directly from Energizer even though the retail prices for disposable batteries are inflated above competitive levels.

105.    Defendants' conduct had a significant impact on prices for Energizer disposable batteries and Energizer Battery Products and has both inflated Energizer's and Walmart's prices above competitive levels and driven distributors off the market. Reducing competition from retail sellers reduces price competition at the retail level.

106.    As shown by Energizer's significant price inflation alleged herein, inter-brand competition did not restrain Energizer from inflating its prices. On the contrary, Energizer's agreement with Wal-Mart reduced price competition between Energizer and Duracell by encouraging Duracell to follow Energizer's price increases and reducing Duracell's incentive to attempt to compete with Energizer on wholesale pricing. Walmart's agreement with Energizer made it easier for Duracell to observe Energizer's price changes and prevented Duracell from competing with Energizer for market share by lowering its prices to Walmart, as Walmart would not sell Duracell battery products at prices that would undermine the effects of the Scheme.

107.    During the Relevant Time Period, Energizer had market power in the wholesale market for disposable battery products, as well as overall disposable-battery dominated lighting products, because Energizer had the power to profitably exclude competition and to inflate and maintain the prices for Energizer Battery Products at supracompetitive levels.

108.    In January 2018, Energizer had around 40% of the U.S. market share for disposable batteries. Its market share has since grown to above 50%. Energizer's market power is enhanced by its agreement with the largest retailer in the United States, Walmart.

109.    The fact that Energizer was able to profitably inflate the prices of Energizer Battery Products shows that there are no sufficiently reasonable substitutes, and therefore that disposable battery products are a relevant market.

110.    Walmart has a dominant position with respect to both other retail outlets and manufacturers.

## VIII.   ANTICOMPETITIVE EFFECTS

111.    The Scheme caused Walmart's retail competitors to pay inflated wholesale prices for Energizer Battery Products, impairing their ability to compete effectively in the retail market.

112.    Defendants' Scheme increased Energizer's market power by reducing competition between Energizer and Duracell, increasing Duracell's incentive to match Energizer's price increases, and reducing the risk that Energizer would lose market share if it inflated its prices above competitive levels.

113.    The scheme enabled Energizer to implement a series of anticompetitive wholesale price increases. This price increases started in 2018 and accelerated in 2020 and 2021. The wholesale prices Energizer charged retailers increased by more than 30% since 2018, and the number of retail sellers of Energizer Battery Products in the market decreased during that time.

114.    The price increases identified above cannot be adequately explained by general inflation in the economy or other competitive market forces.

115.    All of these wholesale price increases were passed on by retailers to consumers, including Plaintiffs and Class Members.

116.    Defendants' Scheme also reduced competition on the retail level by reducing price competition among retailers who sell Energizer Battery Products. In particular, the Scheme forced innovative discount retailers such as Portable Power who attempted to gain market share by offering more efficient distribution that allowed them to offer retail prices lower than Walmart's to increase their retail prices. As a result, the Scheme increased Walmart's market power. For example, Walmart inflated and maintained its retail prices above competitive levels for alkaline and lithium disposable batteries after Energizer inflated its wholesale price in June and July, 2021, as indicated in Figure 4:

/

FIGURE 4: ENERGIZER ALKALINE AND LITHIUM PRODUCTS INDEXED WALMART RETAIL PRICE, (2020Q4 = 100)



## IX.    STATUTES OF LIMITATIONS DO NOT BAR PLAINTIFFS' CLAIMS

### A.    Continuing Violation

117.    During the Relevant Time Period, Defendants' Scheme was a continuing violation in which Defendants repeatedly invaded Plaintiffs' and Class Members' interests by taking overt acts in furtherance of the Scheme.

118.    Throughout the Relevant Time Period, Defendants discussed the Scheme, adjusted it to match new Walmart prices, agreed to new wholesale price increases, and repeatedly enforced their agreement against retailers who attempted to undercut Walmart's retail prices for Energizer Battery Products.

119.    Throughout the Relevant Time Period, Defendants' Scheme repeatedly injured Plaintiffs and members of the class by causing them to pay overcharges each time they purchased Energizer Battery Products.

### B.    Fraudulent Concealment

120.    The statute of limitations is tolled because Defendants fraudulently concealed their Scheme.

121.     Defendants actively concealed their Scheme by having Energizer offer pretextual justifications to Walmart's competitors when it raised their wholesale prices and forced them to raise their retail prices; in reality, Energizer was enforcing the terms of the Scheme.

122.     One pretext Energizer used was that retailers selling at low prices were violating Energizer's pricing policies, including a "Minimum Advertised Price" or "MAP" policy.

123.     A MAP policy is a unilateral policy a supplier enacts that prohibits retailers from advertising the supplier's products for sale below a specified, or minimum-advertised, price. Retailers that violate the MAP risk being cut off from making further purchases of the supplier's products.

124.     As early as July 2019, Energizer's Stephanie Rice told retailer Portable Power's CEO that Energizer was enforcing a MAP policy and taking actions to cut off retailers that violated that policy.

125.     But in September 2020, Portable Power's CEO received an internal Energizer email chain that revealed that Energizer did not actually have a MAP policy. In the email chain, an Energizer Senior Manager told an Energizer senior manager told an Energizer sales manager to enforce Energizer's MAP policy with Portable Power. The sales manager responded that it had been difficult to implement the MAP policy with other customers in the past, because Energizer did not consistently enforce any MAP policy. The senior manager then apologized for potentially being misleading and acknowledged that Energizer did not really have a formal MAP policy in place.

126.     Later, in a phone conversation on or about February 1, 2021, Energizer's Stephanie Rice finally revealed to Portable Power's CEO that Energizer's pricing policies were not about a MAP policy or any other pretext, but were "1000% about Walmart," and that Energizer's Project Atlas was driving Energizer's wholesale prices and policing Walmart's competitors' prices in accordance with the Scheme.

127.     Plaintiffs did not have actual or constructive knowledge of the facts constituting their claim for relief until at least that February 1, 2021 phone conversation, and did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the Scheme until at least that time.

/

## X.     EFFECT ON INTRASTATE AND INTERSTATE COMMERCE

128.     The Energizer Battery Products at issue in this case are sold in interstate commerce, and the unlawful activities alleged in this Complaint have occurred in, and have had a substantial effect upon, interstate commerce in the United States.

129.     Defendants' anticompetitive conduct occurred in part in trade and commerce within the Repealer Jurisdictions set forth herein. During the relevant time period, Energizer Battery Products, manufactured by Energizer, were shipped into each Repealer Jurisdiction and were sold to and paid for by Class Members. Defendants' conspired in restraint of trade within the intrastate commerce of each Repealer Jurisdiction because Defendants agreed to fix the price for Energizer Battery Products sold within each of the Repealer Jurisdictions.

## XI.     CLASS ACTION ALLEGATIONS

130.     Plaintiffs bring this Action as a class action pursuant to Fed. R. Civ. P. 23 and seek certification of a class (the "Class") defined as follows:

> All persons and entities in Repealer Jurisdictions who indirectly[4] purchased Energizer Battery Products for their own use and not for resale, at any time during the period from January 1, 2018 until the anticompetitive effects of Defendants' challenged conduct cease (the "Class Period" or "Relevant Time Period").

131.     A Repealer Jurisdiction is a state or district that has repealed the bar on indirect purchaser plaintiffs recovering under Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), and includes the following: Arizona, California, Connecticut, District of Columbia, Florida, Hawaii, Idaho, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

132.     Excluded from the Class are Defendants, their officers and directors, and members of their immediate families or their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Also excluded from the Class are: any federal,

---

[4] For clarity, purchases of Energizer Battery Products directly from a defendant, including Wal-Mart, do not count as indirect purchases for the purpose of this definition.

state, or local governmental entity; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; any juror assigned to this action; and any co-conspirator identified during the course of this action.

133.   **Numerosity.** The members of the Classes are so numerous that joinder of all members is impracticable. Class Members number in the millions.

134.   **Typicality.** Plaintiffs' claims are typical of the claims of members of the Class, who are similarly affected by Defendants' wrongful conduct in violation of the laws complained of herein. Plaintiffs and all members of the Class were injured in the form of overcharges caused by Defendants' conduct.

135.   Plaintiffs' interests do not conflict with those of members of the Class.

136.   **Commonality.** Questions of law and fact common to the Members of the proposed Class include:

1.   Whether Defendants agreed to increase, fix, or stabilize the prices of Energizer Battery Products;

2.   The nature, scope, and extent of Defendants' agreement;

3.   Whether that agreement violates the Sherman Act and relevant state laws;

4.   Whether retail competition for sales of Energizer Battery Products was impaired by Defendants' agreement;

5.   Whether Plaintiffs and Class Members were injured by Defendants' agreement;

6.   The appropriate measure of classwide damages for members of the Class; and

7.   Whether injunctive relief to prevent Defendants' agreement from recurring is appropriate and, if so, what injunctive relief is appropriate.

137.   **Predominance.** The common issues above predominate over any issues affecting only individual Class Members.

138.   **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable. Furthermore, as the damages suffered by some of the individual Class Members may be relatively

1  small, the expense and burden of individual litigation makes it impractical for individual members of

2  the Class to redress the wrongs done to them. Furthermore, litigating millions of individual cases

3  would inevitably lead to inconsistent rulings and results, burden the judicial and legal system, and

4  magnify the delay and expense to all the parties and the court system through repeated litigation and

5  trial of the same factual and legal issues.

6  ## XII.   COMPLIANCE WITH NOTICE AND DEMAND REQUIREMENTS

7       139.    In accordance with the requirements of Arizona Rev. Stat. § 44-1415; Connecticut Gen.

8  Stat. § 35-37; Hawaii Rev. Stat. § 480-13.3(a); Minnesota Stat. § 325D.63; Nevada Rev. Statute §

9  598A.210(3); New York Gen. Bus. Law § 340(5); Oregon Rev. Stat. § 646.780(5)(b); Rhode Island

10  Gen. Laws § 6-36-21; and Utah Code § 76-10-3109, Plaintiff's counsel sent letters regarding this class-

11  action complaint to the Attorneys General of Arizona, Connecticut, Hawaii, Minnesota, Nevada, New

12  York, Oregon, Rhode Island, and Utah. The letters informed the Attorneys General of the existence of

13  this complaint, identified the relevant state antitrust provisions at issue, and enclosed a copy of this

14  complaint.

15       140.    Counsel sent demand letters to Defendants regarding this class-action complaint, which

16  satisfy the demand-letter requirements of certain consumer-protection statutes mentioned below (e.g.,

17  Massachusetts). The demand letters identified the claimant as Plaintiffs, in their individual and

18  representative capacity; described the allegedly unfair or deceptive acts or practices committed by

19  Defendants (i.e., entering into an agreement to fix the prices of Energizer Battery Products); described

20  Plaintiffs' and the class's injury (inflated prices for Energizer Battery Products); set forth a demand

21  for relief (treble damages, attorneys' fees, litigation costs, and other available sanctions); and

22  requested an offer to cure within the statutorily prescribed time.

23  ## XIII.   CAUSES OF ACTION

24  ### COUNT I
25  ### VIOLATION OF SECTIONS 1 AND 3 OF THE SHERMAN ACT (15 U.S.C. §§ 1, 3)
   ### (ON BEHALF OF RESIDENTS IN REPEALER JURISDICTIONS FOR DECLARATORY
26  ### AND EQUITABLE RELIEF)

27       141.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though

28  fully set forth herein.

142.    Defendants violated 15 U.S.C. §§ 1 and 3 by entering into, furthering, and/or enforcing an unreasonable restraint of trade. More specifically, Energizer agreed with Walmart to fix, increase, inflate, or stabilize prices of Energizer Battery Products.

143.    The agreements reached by Defendants stifle intra-brand competition by eliminating price competition from discount retailers, such as Portable Power and other retailers that compete with Walmart in the retail market.

144.    The agreements reached by Defendants also reduce inter-brand competition between Energizer and Duracell.

145.    **Defendants' Violations Are Subject to the *Per Se* Rule**: Defendants' violation of Sections 1 and 3 of the Sherman Act were *per se* illegal because they are horizontal competitors who reached an agreement to fix the wholesale price of Energizer Battery Products for all direct purchasers.

146.    As Energizer's annual SEC filings acknowledge, one factor that affects Energizer's ability to compete effectively is the risk that Energizer might "lose market share to certain retailers … which may offer 'private label' brands that are typically sold at lower prices and compete with the Company's products in certain categories."[5] Similarly, Energizer acknowledges that "a move by one or more of our large customers to sell significant quantities of private label products, which we do not produce on their behalf and which *directly compete with our products*, could have a material adverse effect on our business …"[6]

147.    Walmart was one of these retailers who competed directly and horizontally with Energizer by offering its own private label brand of disposable batteries.

148.    Therefore, the agreement between Energizer and Walmart to fix and inflate the prices paid by direct purchasers for Energizer Battery Products was a horizontal agreement between competitors.

149.    **Defendants Violated the "Rule of Reason"**: The market for disposable battery products is a relevant antitrust market. Disposable batteries are distinguished from rechargeable

---

[5] 2019 Energizer Form 10-K at 7.

[6] *Id.*

batteries and from specialty batteries due to their different technology designed for specific uses. Disposable batteries are distinct from other types of batteries because they power cheaper, smaller consumer products than rechargeable batteries or other potential substitute products. Disposable batteries are routinely used in toys, key fobs, flashlights, and calculators. Rechargeable batteries are not substitutes for disposable batteries because they are used in different devices and are more expensive.

150.   Energizer has market power in the market for disposable battery products in the United States, controlling approximately 50% market share. There are significant barriers to entry in the disposable battery product market, as new manufacturing facilities require high capital costs, and demand for disposable batteries is declining.

151.   Energizer's power in the market for disposable battery products translates to power in the market for the lighting products it sells, as the dominant components in those products are disposable batteries.

152.   Energizer's market power was enhanced by Energizer having reached an agreement with the largest retailer in the United States, Walmart.

153.   Walmart has market power in many local "brick and mortar" retail markets, as it is the largest retailer in the United States, and the dominant retailer in many relevant geographic markets.

154.   Walmart used its market power to cause Energizer to agree to limit price competition from other retailers.

155.   Defendants' Scheme had substantial price effects in the market for disposable batteries and therefore on Energizer Battery Products. Defendants' agreement increased the wholesale price of Energizer Battery Products substantially, which were then passed on to retail customers including Class Members. The agreement also stifled the competition that should exist between retailers, leading directly to higher retail prices for Energizer Battery Products.

156.   There is no pro-competitive justification for Defendants' Scheme. For example, Energizer Battery Products are not specialized products that require the retailer to expend resources to explain their use to consumers or to maintain a skilled sales staff that is familiar with their products. Therefore, there are no free-rider justifications for the challenged agreements.

157.    Defendants' Scheme violates the rule of reason under a "quick look" analysis because the anticompetitive effect of their agreements is plain and obvious.

158.    Defendants' Scheme violates the full-blown rule of reason because the agreements harm competition without providing any benefit to any relevant market.

159.    As a result of Defendants' Scheme, prices for Energizer Battery Products were inflated above competitive levels in the United States.

160.    As a result of Defendants' Scheme, Plaintiffs and Class Members have been injured in their businesses and property in that they have paid more for Energizer Battery Products than they otherwise would have paid in the absence of that conduct.

161.    With respect to their claim under the Sherman Act, Plaintiffs and Class Members seek injunctive relief and attorneys' fees and costs.

## VIOLATIONS OF STATE ANTITRUST LAWS

162.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

163.    The following Second through Twenty-Eighth Claims for Relief are pleaded under the antitrust laws of each State or jurisdiction identified below, on behalf of Plaintiffs and members of the Class.

164.    Although each individual count relies upon state law, the essential elements of each state antitrust claim are the same. The above-alleged conduct, which violates the federal Sherman Antitrust Act, will, if proven, establish a claim under each of the state laws cited below.

## COUNT II
## VIOLATION OF ARIZONA'S UNIFORM STATE ANTITRUST ACT
## ARIZ. REV. STAT. § 44-1401 ET SEQ.

165.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

166.    By reason of the conduct alleged herein, Defendants have violated ARIZONA REV. STAT. § 44-1401, *et seq.*

167.    Under Arizona law, indirect purchasers have standing to maintain an action under the Antitrust Act based on the facts alleged in this Complaint. *Bunker's Glass Co. v. Pilkington PLC*, 206

Ariz. 9, 11-20 (2003).

168.    Under Arizona law, "[a] contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce, any part of which is within this state, is unlawful." ARIZ. REV. STAT. § 44-1402.

169.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within Arizona.

170.    Defendants' violations of Arizona law were flagrant.

171.    Defendants' unlawful conduct substantially affected Arizona's trade and commerce and Defendants' unlawful conduct occurred in substantial part in Arizona by fixing the prices charged by retailers for Energizer Battery Products in Arizona.

172.    As a direct and proximate cause of Defendants' unlawful conduct, members of the Class have been injured in their business or property and are threatened with further injury.

173.    By reason of the foregoing, members of the Class are entitled to seek all forms of relief available under Arizona Revised Statutes Section 44-1401, *et seq*.

### COUNT III
### VIOLATION OF CALIFORNIA'S CARTWRIGHT ACT
### CAL. BUS. & PROF. CODE § 16700, ET SEQ.

174.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

175.    The California Business & Professions Code generally governs conduct of corporate entities. The Cartwright Act, CAL. BUS. & PROF. CODE §§ 16700-16770, governs antitrust violations in California.

176.    California policy is that "vigorous representation and protection of consumer interests are essential to the fair and efficient functioning of a free enterprise market economy," including by fostering competition in the marketplace. CAL. BUS. & PROF. CODE § 301.

177.    Under the Cartwright Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. CAL. BUS. & PROF. CODE § 16750(a).

178.    A trust in California is any combination of capital, skills or acts by two or more persons

intended for various purposes, including but not limited to creating or carrying out restrictions in trade or commerce, limiting or reducing the production or increasing the price of any commodity, or preventing competition in the market for a commodity. CAL. BUS. & PROF. CODE § 16720. Every trust in California is unlawful except as provided by the Code. *Id.* at § 16726.

179.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within California.

180.    Defendants enacted a combination of capital, skill or acts for the purpose of creating and carrying out restrictions in trade or commerce, in violation of CAL. BUS. & PROF. CODE § 16700, *et seq.*

181.    Defendants' unlawful conduct substantially affected California's trade and commerce and Defendants' unlawful conduct occurred in substantial part in California by fixing the prices charged by retailers for Energizer Battery Products in California.

182.    Plaintiffs and members of the Class purchased Energizer Battery Products within the State of California during the Class Period. But for Defendant's conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

183.    Plaintiffs and members of the Class were injured in their business or property, with respect to purchases of Energizer Battery Products in California and are entitled to all forms of relief, including recovery of treble damages, interest, and injunctive relief, plus reasonable attorneys' fees and costs.

**COUNT IV**
**VIOLATION OF CONNECTICUT ANTITRUST ACT,**
**CONN. GEN. STAT. § 35-24, et seq.**

184.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

185.    The Connecticut Antitrust Act states that "[e]very contract, combination, or conspiracy to monopolize, or attempt to monopolize, or monopolization of any part of trade or commerce is unlawful." CONN. GEN. STAT. § 35-27.

186.    Members of the Class indirectly purchased Energizer Battery Products within

Connecticut during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

187.    Under Connecticut law, indirect purchasers have standing to maintain an action under the antitrust provisions of the Connecticut General Statutes based on the facts alleged in this Complaint, because, in response to an action brought under subsection (c) of Conn. Gen. Stat. section 35-32 or seeking treble damages under section 35-35, a defendant "[m]ay not assert as a defense that the defendant did not deal directly with the person on whose behalf the action is brought." CONN. GEN. STAT. § 35-46a.

188.    Defendants contracted, combined or conspired to act in restraint of trade within Connecticut in violation of CONN. GEN. STAT. § 35-27, *et seq*.

189.    Defendants' unlawful conduct substantially affected Connecticut's trade and commerce and Defendants' unlawful conduct occurred in substantial part in Connecticut by fixing the prices charged by retailers for Energizer Battery Products in Connecticut.

190.    Members of the Class were injured in their business or property, with respect to purchases of Energizer Battery Products in Connecticut and are entitled to all forms of relief, including recovery of treble damages, interest, and injunctive relief, plus reasonable attorneys' fees and costs.

**COUNT V**
**VIOLATION OF DISTRICT OF COLUMBIA ANTITRUST ACT**
**D.C. CODE § 28-4501, ET SEQ.**

191.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

192.    The policy of the District of Columbia Code, Title 28, Chapter 45 (Restraints of Trade) is to "promote the unhampered freedom of commerce and industry throughout the District of Columbia by prohibiting restraints of trade and monopolistic practices." D.C. CODE § 28-4501.

193.    Members of the Class purchased Energizer Battery Products within the District of Columbia during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

194.    Under District of Columbia law, indirect purchasers have standing to maintain an action under the antitrust provisions of the D.C. Code based on the facts alleged in this complaint, because

1   "[a]ny indirect purchaser in the chain of manufacture, production or distribution of goods or services

2   . . . shall be deemed to be injured within the meaning of this chapter." D.C. CODE § 28-4509(a).

3        195.    Defendants contracted, combined or conspired to act in restraint of trade within the

4   District of Columbia, in violation of D.C. CODE § 28-4501, *et seq*.

5        196.    Members of the Class were injured with respect to purchases of Energizer Battery

6   Products in the District of Columbia and are entitled to all forms of relief, including actual damages,

7   treble damages, as well as interest and reasonable attorneys' fees and costs.

8   **COUNT VI**
**VIOLATION OF ILLINOIS ANTITRUST ACT**
9   **740 ILL. COMP. STAT. ANN. 10/3(1), ET SEQ.**

10        197.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

11   allegation set forth in the preceding paragraphs of this Complaint.

12        198.    The Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq.*, aims "to

13   promote the unhampered growth of commerce and industry throughout the State by prohibiting

14   restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend

15   to act to decrease competition between and among persons engaged in commerce and trade . . . ." 740

16   ILL. COMP. STAT. ANN. 10/2.

17        199.    Plaintiffs and members of the Class purchased Energizer Battery Products within the

18   State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price of

19   Energizer Battery Products would have been lower, in an amount to be determined at trial.

20        200.    Under the Illinois Antitrust Act, indirect purchasers have standing to maintain an action

21   for damages based on the facts alleged in this complaint. 740 ILL. COMP. STAT. ANN.10/7(2).

22        201.    Defendants entered into contracts or engaged in a combination or conspiracy for the

23   purpose of fixing, controlling or maintaining prices in the Relevant Market within the State of Illinois.

24        202.    Plaintiffs and members of the Class were injured with respect to purchases of Energizer

25   Battery Products in Illinois and are entitled to all forms of relief, including actual damages, treble

26   damages, and reasonable attorneys' fees and costs.

27   //

28   /

**COUNT VII**
**VIOLATION OF IOWA COMPETITION LAW**
**IOWA CODE § 553.1, ET SEQ.**

203.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

204.    The Iowa Competition Law aims to "prohibit[] restraints of economic activity and monopolistic practices." IOWA CODE § 553.2.

205.    Under Iowa law, indirect purchasers have standing to maintain an action under the Iowa Competition Law based on the facts alleged in this Complaint. *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 449-51 (Iowa 2002).

206.    Members of the Class purchased Energizer Battery Products within the State of Iowa during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

207.    Defendants contracted, combined or conspired to restrain or monopolize trade in the Relevant Market in Iowa in violation of Iowa Code § 553.1, *et seq*.

208.    Members of the Class were injured with respect to purchases of Energizer Battery Products in Iowa, and are entitled to all forms of relief, including actual damages, exemplary damages for willful conduct, reasonable attorneys' fees and costs, and injunctive relief.

**COUNT VIII**
**VIOLATION OF KANSAS RESTRAINT OF TRADE ACT**
**KAN. STAT. ANN. § 50-101, ET SEQ.**

209.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

210.    The Kansas Restraint of Trade Act aims to prohibit practices which, *inter alia*, "tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state . . . ." KAN. STAT. ANN. § 50-112.

211.    Members of the Class purchased Energizer Battery Products within the State of Kansas during the Class Period.

212.    But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

34

213. Under the Kansas Restraint of Trade Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. KAN. STAT. ANN. § 50-161(b).

214. Defendants combined capital, skills or acts for the purposes of creating restrictions in trade or commerce in the Relevant Market, increasing the price of Energizer Battery Products, or preventing competition in the sale of Energizer Battery Products, in a manner that established the price of Energizer Battery Products and precluded free and unrestricted competition among themselves in the sale of Energizer Battery Products, in violation of KAN. STAT. ANN. § 50-101, *et seq.*

215. Members of the Class were injured with respect to purchases of Energizer Battery Products in Kansas and are entitled to all forms of relief, including actual damages, reasonable attorneys' fees and costs, and injunctive relief.

### COUNT IX
### VIOLATION OF MAINE'S ANTITRUST STATUTE
### ME. REV. STAT. ANN. TIT. 10 § 1101, ET SEQ.

216. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

217. Part 3 of Title 10 of the Maine Revised Statutes generally governs regulation of trade in Maine. Chapter 201 thereof governs monopolies and profiteering, generally prohibiting contracts in restraint of trade and conspiracies to monopolize trade. *See* ME. REV. STAT. ANN. tit. 10, §§ 1101-02.

218. Plaintiffs and members of the Class purchased Energizer Battery Products within the State of Maine during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

219. Under Maine law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. ME. REV. STAT. ANN. tit. 10, § 1104(1).

220. Defendants contracted, combined or conspired in restraint of trade or commerce in the Relevant Market within the intrastate commerce of Maine in violation of ME. REV. STAT. ANN. tit. 10, § 1101, *et seq*.

221. Plaintiffs and members of the Class were injured with respect to purchases of Energizer Battery Products in Maine and are entitled to all forms of relief, including actual damages, treble

damages, and reasonable attorneys' and experts' fees and costs.

**COUNT X**
**VIOLATION OF MARYLAND'S ANTITRUST STATUTE**
**MD. CODE ANN. § 11-204(A), ET SEQ.**

222. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

223. Maryland's antitrust statute makes it unlawful to, *inter alia*, "[b]y contract, combination, or conspiracy with one or more persons, unreasonably restrain trade or commerce." Md. Code Ann. § 11-204(a)(1).

224. The purpose of Maryland's antitrust statute is "to complement the body of federal law governing restraints of trade, unfair competition, and unfair, deceptive, and fraudulent acts or practices." MD. CODE ANN. § 11-202(a)(1).

225. Under Maryland law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. MD. CODE. ANN. § 11-209(b)(2)(i).

226. Defendants contracted, combined or conspired in restraint of trade or commerce in the Relevant Market within the intrastate commerce of Maryland in violation of MD. CODE ANN. § 204(a)(2), *et seq*.

227. Under Maryland's antitrust statute, a plaintiff who establishes a violation is entitled to recover three times the amount of actual damages resulting from the violation, along with costs and reasonably attorneys' fees. MD. CODE ANN. § 209(b)(4).

228. Members of the Class were injured with respect to purchases of Energizer Battery Products in Maryland and are entitled to all forms of relief, including actual damages, treble damages, and reasonable attorneys' and experts' fees and costs.

**COUNT XI**
**VIOLATION OF THE MICHIGAN ANTITRUST REFORM ACT**
**MICH. COMP. LAWS § 445.771, ET SEQ.**

229. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

230. The Michigan Antitrust Reform Act aims "to prohibit contracts, combinations, and conspiracies in restraint of trade or commerce . . . to prohibit monopolies and attempts to monopolize

trade or commerce . . . [and] to provide remedies, fines, and penalties for violations of this act." Mich. Act 274 of 1984 (MICH. COMP. LAWS § 445.771, *et seq.*).

231.    Plaintiffs and members of the Class purchased Energizer Battery Products within the State of Michigan during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

232.    Under the Michigan Antitrust Reform Act, indirect purchasers have standing to maintain an action based on the facts alleged in this complaint. MICH. COMP. LAWS § 445.778(2).

233.    Defendants contracted, combined, or conspired to restrain or monopolize trade or commerce in the Relevant Market in violation of MICH. COMP. LAWS § 445.772.

234.    Plaintiffs and members of the Class were injured with respect to purchases of Energizer Battery Products in Michigan and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief.

## COUNT XII
### VIOLATION OF THE MINNESOTA ANTITRUST LAW
### MINN. STAT. §§ 325D.49, et seq. & 325D.57, et seq.

235.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

236.    The Minnesota Antitrust Law of 1971 prohibits "any contract, combination or conspiracy when any part thereof was created, formed, or entered into in [Minnesota]; and any contract, combination or conspiracy, wherever created, formed or entered into; any establishment, maintenance or use of monopoly power; and any attempt to establish, maintain or use monopoly power, whenever any of the foregoing affects the trade or commerce of [Minnesota]." MINN. STAT. § 325D.54.

237.    Plaintiffs and members of the Class purchased Energizer Battery Products within the State of Minnesota during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

238.    Under the Minnesota Antitrust Act of 1971, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. MINN. STAT. § 325D.57.

239.    Defendants contracted, combined or conspired in unreasonable restraint of trade or commerce in the Relevant Market, within the intrastate commerce in and outside of Minnesota in violation of MINN. STAT. § 325D.49, *et seq*.

240.    Plaintiffs and members of the Class were injured with respect to purchases of Energizer Battery Products in Minnesota and are entitled to all forms of relief, including actual damages, treble damages, costs and disbursements, reasonable attorneys' fees, and injunctive relief necessary to prevent and restrain violations hereof.

## COUNT XIII
## VIOLATION OF THE MISSISSIPPI ANTITRUST STATUTE
## MISS. CODE ANN. § 75-21-1, et seq.

241.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

242.    Title 75 of the Mississippi Code regulates trade, commerce and investments. Chapter 21 thereof generally prohibits trusts and combines in restraint or hindrance of trade, with the aim that "trusts and combines may be suppressed, and the benefits arising from competition in business [are] preserved" to Mississippians. MISS. CODE ANN. § 75-21-39.

243.    "A trust or combine is a combination, contract, understanding or agreement, express or implied . . . when inimical to the public welfare" and with the effect of, *inter alia*, restraining trade, increasing the price or output of a commodity, or hindering competition in the production or sale of a commodity. MISS. CODE ANN. § 75-21-1.

244.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within Mississippi.

245.    Defendants sold Energizer Battery Products within Mississippi.

246.    Members of the Class purchased Energizer Battery Products within the State of Mississippi during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

247.    Under Mississippi law, indirect purchasers have standing to maintain an action under the antitrust provisions of the Mississippi Code based on the facts alleged in this Complaint. MISS.

CODE ANN. § 75-21-9.

248.    Defendants combined, contracted, understood, and agreed in a manner inimical to public welfare, with the effect of restraining trade, increasing the price of Energizer Battery Products and hindering competition in the sale of Energizer Battery Products, in violation of MISS. CODE ANN. § 75-21-1, *et seq*.

249.    Energizer Battery Products are sold indirectly via retailers throughout the State of Mississippi. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

250.    Defendants' unlawful conduct substantially affected Mississippi's trade and commerce and Defendants' unlawful conduct occurred in substantial part in Mississippi by fixing the prices charged by retailers for Energizer Battery Products in Mississippi.

251.    Members of the Class were injured with respect to purchases of Energizer Battery Products in Mississippi and are entitled to all forms of relief, including actual damages and a penalty of $500 per instance of injury.

<div align="center">

**COUNT XIV**
**VIOLATION OF THE NEBRASKA JUNKIN ACT**
**NEB. REV. STAT. § 59-801, et seq.**

</div>

252.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

253.    Chapter 59 of the Nebraska Revised Statutes generally governs business and trade practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust violations such as restraints of trade and monopolization.

254.    Members of the Class purchased Energizer Battery Products within the State of Nebraska during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

255.    Under Nebraska law, indirect purchasers have standing to maintain an action under the Junkin Act based on the facts alleged in this Complaint. NEB. REV. STAT. § 59-821.

256.    Defendants contracted, combined or conspired in restraint of trade or commerce in the Relevant Market within the intrastate commerce of Nebraska in violation of NEB. REV. STAT. § 59-

<div align="center">

39

</div>

801, *et seq.*

257.     Members of the Class were injured with respect to purchases of Energizer Battery Products in Nebraska and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

**COUNT XV**
**VIOLATION OF THE NEVADA UNFAIR TRADE PRACTICES ACT**
**NEV. REV. STAT. § 598A.010, et seq.**

258.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

259.     The Nevada Unfair Trade Practices Act ("NUTPA") states that "free, open and competitive production and sale of commodities and services is necessary to the economic well-being of the citizens of the State of Nevada." NEV. REV. STAT. ANN. § 598A.030(1).

260.     The policy of NUTPA is to "[p]rohibit acts in restraint of trade or commerce," "[p]reserve and protect the free, open and competitive market," and "[p]enalize all persons engaged in [] anticompetitive practices." NEV. REV. STAT. ANN. § 598A.030(2). Such acts include, *inter alia*, price fixing, division of markets, allocation of customers, and monopolization of trade. *See* NEV. REV. STAT. § 598A.060.

261.     Members of the Class purchased Energizer Battery Products within the State of Nevada during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

262.     Under Nevada law, indirect purchasers have standing to maintain an action under NUTPA based on the facts alleged in this Complaint. NEV. REV. STAT. ANN. § 598A.210(2).

263.     Defendants contracted, combined or conspired in restraint of trade or commerce in the Relevant Market within the intrastate commerce of Nevada in violation of NEV. REV. STAT. ANN. § 598A.010, *et seq*.

264.     Members of the Class were injured with respect to purchases of Energizer Battery Products in Nevada in that at least thousands of sales of Energizer Battery Products took place in Nevada, purchased by Nevada consumers at supra-competitive prices caused by Defendants' conduct.

265. Accordingly, members of the Class are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

**COUNT XVI**
**VIOLATION OF NEW HAMPSHIRE'S ANTITRUST STATUTE,**
**N.H. REV. STAT. ANN. tit. XXXI, § 356, et seq.**

266. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

267. Title XXXI of the New Hampshire Statutes generally governs trade and commerce.

268. Chapter 356 thereof governs combinations and monopolies and prohibits restraints of trade. *See* N.H. REV. STAT. ANN. tit. XXXI, §§ 356:2, 3.

269. Plaintiffs and members of the Class purchased Energizer Battery Products within the State of New Hampshire during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

270. Under New Hampshire law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.H. REV. STAT. ANN. §356:11(II).

271. Defendants contracted, combined or conspired in restraint of trade or commerce in the Relevant Market within the intrastate commerce of New Hampshire in violation of N.H. REV. STAT. ANN. § 356:1, *et seq*.

272. Plaintiffs and members of the Class were injured with respect to purchases of Energizer Battery Products in New Hampshire and are entitled to all forms of relief, including actual damages sustained, treble damages for willful or flagrant violations, reasonable attorneys' fees, costs, and injunctive relief.

**COUNT XVII**
**VIOLATION OF THE NEW MEXICO ANTITRUST ACT,**
**N.M. STAT. ANN. § 57-1-1, et seq.**

273. Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

274. The New Mexico Antitrust Act aims to "prohibit[] restraints of trade and monopolistic practices." N.M. STAT. ANN. § 57-1-15.

275. Members of the Class purchased Energizer Battery Products within the State of New

41

Mexico during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

276.   Under New Mexico law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. *See* N.M. STAT. ANN. § 57-1-3(A).

277.   Defendants contracted, agreed, combined or conspired in restraint of trade in the Relevant Market within the intrastate commerce of New Mexico, in violation of N.M. Stat. ANN. § 57-1-1, *et seq*.

278.   Members of the Class were injured with respect to purchases of Energizer Battery Products in New Mexico and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

## COUNT XVIII
## VIOLATION OF SECTION 340 OF THE NEW YORK GENERAL BUSINESS LAW
### N.Y. GEN. BUS. LAW § 340, et seq.

279.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

280.   Section 340 of Article 22 of the New York General Business Law prohibits monopolies and contracts or agreements in restraint of trade, with the policy of encouraging competition or the free exercise of any activity in the conduct of any business, trade or commerce in New York. See N.Y. GEN. BUS. LAW § 340(1).

281.   Plaintiffs and members of the Class purchased Energizer Battery Products within the State of New York during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

282.   Under New York law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. *See* N.Y. GEN. BUS. LAW § 340(6).

283.   Defendants restrained competition in the free exercise of the conduct of the business in the Relevant Market within the intrastate commerce of New York, in violation of N.Y. Gen. Bus. Law § 340, *et seq*. Defendants' unlawful conduct substantially affected New York's trade and commerce and Defendants' unlawful conduct occurred in substantial part in New York by fixing the prices charged by retailers for Energizer Battery Products in New York.

284.    Plaintiffs and members of the Class were injured with respect to purchases of Energizer Battery Products in New York and are entitled to all forms of relief, including actual damages, treble damages, costs not exceeding $10,000, and reasonable attorneys' fees and all relief available under N.Y. Gen. Bus. Law §349, *et seq*.

### COUNT XIX
### VIOLATION OF THE NORTH CAROLINA GENERAL STATUTES,
### N.C. GEN. STAT. § 75-1, et seq.

285.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

286.    Chapter 75 of the North Carolina Statutes generally governs unlawful business practices, including antitrust violations such as restraints of trade and monopolization.

287.    Under North Carolina law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. *See Hyde v. Abbott Labs., Inc.*, 123 N.C. App. 572, 584 (1996).

288.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within North Carolina because Defendants' agreement fixed the retail prices of Energizer Battery Products in North Carolina, both before and after they were imported into North Carolina.

289.    Defendants' unlawful conduct substantially affected North Carolina's intrastate trade and commerce.

290.    As a direct and proximate cause of Defendants' unlawful conduct, members of the Class have been injured in their business or property and are threatened with further injury.

291.    By reason of the foregoing, members of the Class are entitled to seek all forms of relief available, including treble damages, under N.C. Gen. Stat. § 75-1, *et seq*.

### COUNT XX
### VIOLATION OF THE NORTH DAKOTA UNIFORM STATE ANTITRUST ACT,
### N.D. CENT. CODE § 51-08.1-01, et seq.

292.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

293.    The North Dakota Uniform State Antitrust Act generally prohibits restraints on or monopolization of trade. *See* N.D. CENT. CODE § 51-08.1-01, *et seq.*

294.    Members of the Class purchased Energizer Battery Products within the State of North Dakota during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

295.    Under the North Dakota Uniform State Antitrust Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.D. CENT. CODE § 51- 08.1-08.

296.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within North Dakota.

297.    Defendants' violations of North Dakota law were flagrant.

298.    Defendants' unlawful conduct substantially affected North Dakota's trade and commerce.

299.    As a direct and proximate cause of Defendants' unlawful conduct, members of the Class were injured with respect to purchases in North Dakota and are threatened with further injury, and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, costs, reasonable attorneys' fees, and injunctive or other equitable relief available under N.D. CENT. CODE § 51-08.1-01, *et seq.*

### COUNT XXI
### VIOLATION OF THE OREGON ANTITRUST LAW,
### OR. REV. STAT. § 646.705, et seq.

300.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

301.    Chapter 646 of the Oregon Revised Statutes generally governs business and trade practices within Oregon. Sections 705 through 880 thereof govern antitrust violations, with the policy to "encourage free and open competition in the interest of the general welfare and economy of the state." OR. REV. STAT. § 646.715(1).

302.    Members of the Class purchased Energizer Battery Products within the State of Oregon during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery

Products would have been lower, in an amount to be determined at trial.

303.    Under Oregon law, indirect purchasers have standing under the antitrust provisions of the Oregon Revised Statutes to maintain an action based on the facts alleged in this Complaint. OR. REV. STAT. § 646.780(1)(a).

304.    Defendants contracted, combined, or conspired in restraint of trade or commerce in the Relevant Market in violation of OR. REV. STAT. § 646.705, *et seq*. *See* OR. REV. STAT. §§ 646.725-730.

305.    Members of the Class were injured with respect to purchases of Energizer Battery Products within the intrastate commerce of Oregon, or alternatively to interstate commerce involving actual or threatened injury to persons located in Oregon, and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, expert witness fees and investigative costs, and injunctive relief.

## COUNT XXII
## VIOLATION OF THE PUERTO RICAN ANTI-MONOPOLY ACT,
## P.R. LAWS TIT. 10, § 260, et seq.

306.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

307.    The provisions of the Puerto Rican Anti-Monopoly Act of 1964 (the AMA) parallel Sections 1 and 2 of the Sherman Act, and other federal statutes. Those provisions are supplemented by The Regulation on Fair Competition Number VII, which proscribes certain conduct including the type engaged in by Defendants more fully described above.

308.    Under the AMA, it is unlawful to monopolize, or attempt to monopolize any part of the trade or commerce in the Commonwealth of Puerto Rico. P.R. LAWS TIT. 10, § 260.

309.    Members of the class purchased Energizer Battery Products within Puerto Rico during the class period. But for Defendants' conduct set forth herein, the price of those Energizer Battery Products would have been lower, in an amount to be determined at trial.

310.    By reason of the foregoing, members of the class are entitled to seek all forms of relief available, including treble damages, attorneys' fees, and costs of suit. P.R. LAWS TIT. 10, § 268.

/

1

**COUNT XXIII**
**VIOLATION OF THE RHODE ISLAND ANTITRUST ACT,**
**6 R.I. GEN. LAWS § 6-36-1, et seq.**

2

3       311.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

4   allegation set forth in the preceding paragraphs of this Complaint.

5       312.    The Rhode Island Antitrust Act aims "[t]o promote the unhampered growth of

6   commerce and industry throughout [Rhode Island] by prohibiting unreasonable restraints of trade and

7   monopolistic practices" that hamper, prevent or decrease competition. 6 R.I. GEN. LAWS § 6-36-

8   2(a)(2).

9       313.    Members of the class purchased Energizer Battery Products within the State of Rhode

10  Island during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer

11  Battery Products would have been lower, in an amount to be determined at trial.

12      314.    Under the Rhode Island Antitrust Act, indirect purchasers have standing to maintain an

13  action based on the facts alleged in this Complaint. R.I. GEN. LAWS § 6-36-11(a).

14      315.    Defendants contracted, combined and conspired in restraint of trade in the Relevant

15  Market within the intrastate commerce of Rhode Island in violation of 6 Rhode Island General Laws

16  § 6-36-1, *et seq.*

17      316.    Members of the Class were injured with respect to purchases of Energizer Battery

18  Products in Rhode Island and are entitled to all forms of relief, including actual damages, treble

19  damages, reasonable costs, reasonable attorneys' fees, and injunctive relief.

20

**COUNT XXIV**
**VIOLATION OF THE SOUTH DAKOTA ANTITRUST STATUTE,**
**S.D. CODIFIED LAWS § 37-1-3.1, et seq.**

21

22      317.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

23  allegation set forth in the preceding paragraphs of this Complaint.

24      318.    Chapter 37-1 of the South Dakota Codified Laws prohibits restraint of trade,

25  monopolies and discriminatory trade practices. S.D. CODIFIED LAWS §§ 37-1-3.1, 3.2.

26      319.    Members of the Class purchased Energizer Battery Products within the State of South

27  Dakota during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer

28  Battery Products would have been lower, in an amount to be determined at trial.

320.     Under South Dakota law, indirect purchasers have standing under the antitrust provisions of the South Dakota Codified Laws to maintain an action based on the facts alleged in this Complaint. *See* S.D. CODIFIED LAWS § 37-1-33.

321.     Defendants contracted, combined or conspired in restraint of trade or commerce in the Relevant Market within the intrastate commerce of South Dakota in violation of S.D. CODIFIED LAWS § 37-1, *et seq*.

322.     Members of the Class were injured with respect to purchases of Energizer Battery Products in South Dakota and are entitled to all forms of relief, including actual damages, treble damages, taxable costs, reasonable attorneys' fees, and injunctive or other equitable relief.

### COUNT XXV
### VIOLATION OF THE TENNESSEE TRADE PRACTICES ACT,
### TENN. CODE § 47-25-101, ET SEQ.

323.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

324.     The Tennessee Trade Practices Act generally governs commerce and trade in Tennessee, and it prohibits, *inter alia*, all arrangements, contracts, agreements, or combinations between persons or corporations made with a view to lessen, or which tend to lessen, full and free competition in goods in Tennessee. All such arrangements, contracts, agreements, or combinations between persons or corporations designed, or which tend, to increase the prices of any such goods, are against public policy, unlawful, and void. *See* TENN. CODE, § 47-25-101.

325.     Under Tennessee law, indirect purchasers have standing under the Tennessee Trade Practice Acts to maintain an action based on the facts alleged in this Complaint. *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 520 (Tenn. 2005).

326.     Defendants competed unfairly and colluded by meeting to fix prices and otherwise restrain trade as set forth herein, in violation of Tenn. Code, § 47-25-101, *et seq.*

327.     Defendants' conduct violated the Tennessee Trade Practice Act because it was an arrangement, contract, agreement, or combination to lessen full and free competition in goods in Tennessee, and because it tended to increase the prices of goods in Tennessee. Specifically, Defendant's combination or conspiracy had the following effects: (1) price competition in the Relevant

Market was restrained, suppressed, and eliminated throughout Tennessee; (2) prices for Energizer Battery Products were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) members of the Class were deprived of free and open competition; and (4) members of the Class paid supra-competitive, artificially inflated prices for Energizer Battery Products.

328.    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce as Energizer Battery Products were sold in Tennessee.

329.    A substantial part of Defendants illegal conduct occurred within Tennessee because Defendants' agreement fixed the retail prices of Energizer Battery Products in Tennessee , both before and after they were imported into Tennessee.

330.    Members of the Class purchased Energizer Battery Products within the State of Tennessee during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

331.    As a direct and proximate result of Defendant's unlawful conduct, members of the Class have been injured in their business and property and are threatened with further injury.

332.    Members of the Class were injured with respect to purchases of Energizer Battery Products in Tennessee and are entitled to all forms of relief available under the law, including return of the unlawful overcharges that they paid on their purchases, damages, equitable relief, and reasonable attorneys' fees.

<div align="center">

**COUNT XXVI**
**VIOLATION OF THE UTAH ANTITRUST ACT,**
**UTAH CODE ANN. § 76-10-3101, et seq.**

</div>

333.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

334.    The Utah Antitrust Act aims to "encourage free and open competition in the interest of the general welfare and economy of this state by prohibiting monopolistic and unfair trade practices, combinations and conspiracies in restraint of trade or commerce." UTAH CODE ANN. § 76-10-3102.

335.    Members of the Class purchased Energizer Battery Products within the State of Utah during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

336.   Under the Utah Antitrust Act, indirect purchasers who are either Utah residents or Utah citizens have standing to maintain an action based on the facts alleged in this Complaint. UTAH CODE ANN. § 76-10-3109(1)(a).

337.   Defendants contracted, combined or conspired in restraint of trade or commerce in the Relevant Market in violation of UTAH CODE ANN. § 76-10-3101, *et seq.*

338.   Members of the Class who are either Utah residents or Utah citizens were injured with respect to purchases of Energizer Battery Products in Utah and are entitled to all forms of relief, including actual damages, treble damages, costs of suit, reasonable attorneys' fees, and injunctive relief.

## COUNT XXVII
## VIOLATION OF THE WEST VIRGINIA ANTITRUST ACT,
## W. VA. CODE § 47-18-1, et seq.

339.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

340.   The violations of law set forth above also constitute violations of Section 47-18-1 of the West Virginia Code.

341.   During the Class Period, Defendants engaged in anticompetitive conduct alleged above, including a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce within the intrastate commerce of West Virginia in violation of W. VA. CODE §§ 47-18-3; 47-18-4.

342.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within West Virginia.

343.   Plaintiffs and members of the Class purchased Energizer Battery Products within the State of West Virginia during the Class Period. But for Defendant's conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

344.   Under West Virginia law, indirect purchasers have standing to maintain an action under the West Virginia Antitrust Act based on the facts alleged in this Complaint. W. VA. CODE St. R. 142-9-2 ("Any person who is injured directly or indirectly by reason of a violation of the West Virginia

1    Antitrust Act, W. Va. Code § 47-18-1, et seq., may bring an action for damages under W. Va. Code

2    § 47-18-9.").

3        345.    Defendants' anticompetitive acts described above were knowing, willful and constitute

4    violations or flagrant violations of the West Virginia Antitrust Act.

5        346.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

6    members of the Class have been injured in their business and property in that they paid more for

7    Energizer Battery Products than they otherwise would have paid in the absence of Defendants'

8    unlawful conduct.

9        347.    Plaintiffs and members of the Class have standing to pursue their claims under, *inter*

10   *alia*, W. VA. CODE § 47-18-9.

11       348.    As a result of Defendants' violation of Section 47-18-3 of the West Virginia Antitrust

12   Act, Plaintiffs and members of the Class seek treble damages and their cost of suit, including

13   reasonable attorneys' fees, pursuant to Section 47-18-9 of the West Virginia Code.

14                           **COUNT XXVIII**
                  **VIOLATION OF THE WISCONSIN ANTITRUST ACT,**
15                      **WIS. STAT. § 133.01, et seq.**

16       349.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

17   allegation set forth in the preceding paragraphs of this Complaint.

18       350.    Chapter 133 of the Wisconsin Statutes governs trust and monopolies, with the intent "to

19   safeguard the public against the creation or perpetuation of monopolies and to foster and encourage

20   competition by prohibiting unfair and discriminatory business practices which destroy or hamper

21   competition." WIS. STAT. § 133.01.

22       351.    Members of the class purchased Energizer Battery Products within the State of

23   Wisconsin during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer

24   Battery Products would have been lower, in an amount to be determined at trial.

25       352.    Under Wisconsin law, indirect purchasers have standing under the antitrust provisions

26   of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. *See* WIS.

27   STAT. § 133.18(1)(a).

28       353.    Defendants contracted, combined or conspired in restraint of trade or commerce in the

                                        50

Relevant Market, with the intention of injuring or destroying competition therein, in violation of WIS. STAT. § 133.01, *et seq.*

354.   Members of the Class were injured with respect to purchases of Energizer Battery Products in Wisconsin in that the actions alleged herein substantially affected the people of Wisconsin, with at least thousands of consumers in Wisconsin paying substantially higher prices for Energizer Battery Products in Wisconsin.

355.   Accordingly, members of the Class are entitled to all forms of relief, including actual damages, treble damages, costs and reasonable attorneys' fees, and injunctive relief.

**VIOLATIONS OF STATE CONSUMER PROTECTION LAWS**

356.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

357.   Defendants' above-described Scheme and conduct constitutes unfair competition, unconscionable conduct, and deceptive acts and practices in violation of the state consumer protection statutes set forth below. As a direct and proximate result of Defendants' anticompetitive, deceptive, unfair, and/or unconscionable acts or practices, Plaintiffs and the Class paid higher prices for Energizer Battery Products than they should have.

358.   The gravity of harm from Defendants' wrongful conduct significantly outweighs any conceivable utility from that conduct. Plaintiff and Class members could not reasonably have avoided injury from Defendants' wrongful conduct.

359.   Plaintiffs and members of the Class purchased goods, namely Energizer Battery Products, primarily for personal, family, or household purposes.

360.   There was and is a gross disparity between the price that Plaintiffs and the Class members paid for Energizer Battery Products and the value they received.

361.   The following Twenty-Ninth through Forty-Fifth Counts are pleaded under the consumer protection or similar laws of each State or jurisdiction identified below, on behalf of Plaintiffs and members of the State Class.

//

/

1

2

**COUNT XXIX**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW,**
**CAL. BUS. & PROF. CODE § 17200, et seq. (THE "UCL")**

3       362.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

4    allegation set forth in the preceding paragraphs of this Complaint.

5       363.    The violations of federal antitrust law set forth above also constitute violations of

6    Section 17200, *et seq.* of the California Business and Professions Code.

7       364.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or

8    fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified

9    above.

10      365.    This claim is instituted pursuant to Sections 17203 and 17204 of the California

11   Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein,

12   that violated the UCL.

13      366.    Defendants' conduct as alleged herein violated the UCL. The acts, omissions,

14   misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a

15   common, continuous, and continuing course of conduct of unfair competition by means of unfair,

16   unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but

17   not limited to, the violations of Section 16720, *et seq.*, of California Business and Professions Code,

18   set forth above.

19      367.    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as

20   described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and

21   Professions Code, and whether or not concerted or independent acts, are otherwise unfair,

22   unconscionable, unlawful or fraudulent.

23      368.    Plaintiffs and members of the Class are entitled to, *inter alia*, full restitution and/or

24   disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been

25   obtained by Defendants as a result of such business acts or practices.

26      369.    The illegal conduct alleged herein is continuing and there is no indication that

27   Defendants will not continue such activity into the future.

28      370.    The unlawful and unfair business practices of Defendants, and each of them, as

described above, have caused and continue to cause members of the Class to pay supra-competitive and artificially-inflated prices for Energizer Battery Products sold in the State of California. Plaintiffs and the members of the Class suffered injury in fact and lost money or property as a result of such unfair competition.

371.    As alleged in this Complaint, Defendants have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code Sections 17203 and 17204.

<div align="center">

**COUNT XXX**

**VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION
PROCEDURES ACT, D.C. CODE § 28-3901, et seq.**

</div>

372.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

373.    Members of the Class purchased Energizer Battery Products for personal, family, or household purposes.

374.    By reason of the conduct alleged herein, Defendants have violated D.C. CODE § 28-3901, *et seq.*

375.    Defendants are "merchants" within the meaning of D.C. CODE § 28- 3901(a)(3).

376.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within the District of Columbia.

377.    Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the District of Columbia.

378.    Defendants' unlawful conduct substantially affected the District of Columbia's trade and commerce.

379.    As a direct and proximate cause of defendants' unlawful conduct, members of the Class have been injured in their business or property and are threatened with further injury.

<div align="center">

53

Class Action Complaint

</div>

380.     By reason of the foregoing, members of the Class are entitled to seek all forms of relief, including treble damages or $1500 per violation (whichever is greater) plus punitive damages, reasonable attorney's fees and costs under D.C. CODE § 28-3901, *et seq.*

<div align="center">

**COUNT XXXI**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT,**
**FLA. STAT. § 501.201(2), et seq.**

</div>

381.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

382.     The Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (the "FDUTPA"), generally prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," including practices in restraint of trade. FLA. STAT. § 501.204(1).

383.     The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).

384.     Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA based on the facts alleged in this complaint. *See* FLA. STAT. § 501.211(1) ("anyone aggrieved by a violation of this [statute] may bring an action . . .").

385.     Plaintiffs and members of the Class purchased Energizer Battery Products within the State of Florida during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

386.     Defendants entered into a contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within Florida.

387.     Accordingly, Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Florida.

388.     Defendants' unlawful conduct substantially affected Florida's trade and commerce.

389.     As a direct and proximate cause of Defendants' unlawful conduct, members of the

<div align="center">54</div>

Class have been injured in their business or property by virtue of being forced to pay overcharges on Energizer Battery Products. Because Defendants' anticompetitive agreement to fix the price of Energizer Battery Products is ongoing and because members of the Class buy Energizer Battery Products on a regular basis, there is a high probability that members of the Class will suffer injury in the future as a result of Defendants' conduct.

390.    By reason of the foregoing, members of the Class are entitled to seek all forms of relief, including injunctive relief pursuant to Fla. Stat. § 501.208 and declaratory judgment, actual damages, reasonable attorneys' fees and costs pursuant to FLA. STAT. § 501.211.

<div align="center">

**COUNT XXXII**
**VIOLATION OF THE HAWAII REVISED STATUTES ANNOTATED,**
**§§ 480-1, ET SEQ.**

</div>

391.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

392.    Hawaii's unfair competition statute prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." HAW. REV. STAT. ANN. § 480-2.

393.    Defendants' anticompetitive Scheme, which is described above, constitutes an unfair method of competition, or unfair, unconscionable, or deceptive acts or practices, in violation of the HAW. REV. STAT. ANN. §§ 480-1, *et seq*.

394.    Defendants' conduct was intentional, i.e., it entered into exclusionary agreements in order to suppress competition in the Relevant Market.

395.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

396.    Defendants' unlawful conduct had the following effects: (1) Energizer Battery Product price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Energizer Battery Product prices were fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) members of the Class were deprived of free and open competition; (4) members of the Class paid supracompetitive, artificially inflated prices for Energizer Battery Products; and (5) retailers in Hawaii were prevented from charging a competitive price for Energizer Battery Products.

397.   During the Class Period, members of the Class purchased, paid, and/or provided reimbursement for some or all of the purchase price of rotavirus vaccines within Hawaii.

398.   As a direct and proximate result of Defendants' unlawful conduct, members of the class have been injured and there is a high probability that they will suffer injury in the future as a result of Defendants' conduct.

399.   In light of the above, members of the Class are entitled to seek all available relief under Hawaii's consumer-protection laws, including actual damages, treble damages, punitive damages (to the extent available), injunctive relief, attorneys' fees, costs, etc.

<div align="center">

**COUNT XXXIII**
**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT,**
**IDAHO CODE § 48-601, et seq.**

</div>

400.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

401.   The Idaho Consumer Protection Act (the "ICPA") prohibits "unfair methods of competition and unfair or deceptive acts and practices in the conduct of trade or commerce," IDAHO CODE §§ 48-601, which includes, among other things, "any unconscionable method, act or practice in the conduct of any trade or commerce." *Id.* § 48-603C.

402.   Defendants' anticompetitive efforts, which are described above, constituted an unfair method of competition, or an unconscionable practice, under the ICPA.

403.   Defendants' intentionally engaged in the above conduct in order to reduce competition in the Relevant Market.

404.   Defendants' alleged conduct would outrage or offend the public conscious.

405.   During the Class Period, members of the class purchased, paid, and/or provided reimbursement for some or all of the purchase price of Energizer Battery Products in Idaho.

406.   Defendants' conduct was the proximate cause of injuries to members of the Class, namely in the form of overcharges for Energizer Battery Products.

407.   Because Energizer Battery Products are purchased on an ongoing basis, there is a high probability that members of the Class will suffer injury in the future, as a result of Defendants' conduct.

1    408.    In light of the above, members of the Class are entitled to seek actual damages, along

2 with any other form of relief that the Court deems proper under the ICPA, including actual damages,

3 statutory damages, punitive damages, attorneys' fees, costs, injunctive relief, etc. *See* IDAHO CODE §

4 48-608.

5                                    **COUNT XXXIV**
     **VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT,**
6                    **MASS. GEN. LAWS. CH. 93A § 1, et seq.**

7    409.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

8 allegation set forth in the preceding paragraphs of this Complaint.

9    410.    By reason of the conduct alleged herein, including the violation of federal antitrust

10 laws, Defendants have violated the Massachusetts Consumer Protection Act, MASS. GEN. LAWS ch.

11 93A § 2, *et seq*.

12    411.    Plaintiffs and members of the Class purchased Energizer Battery Products within the

13 Commonwealth of Massachusetts during the Class Period. But for Defendants' conduct set forth

14 herein, the price paid would have been lower, in an amount to be determined at trial.

15    412.    Defendants entered into a contract, combination, or conspiracy between two or more

16 persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part

17 of which occurred within Massachusetts.

18    413.    Defendants' conduct was an unfair method of competition, and an unfair or deceptive

19 act or practice within the conduct of commerce within the Commonwealth of Massachusetts.

20    414.    Defendants' unlawful conduct substantially affected Massachusetts' trade and

21 commerce.

22    415.    Plaintiffs and members of the Class purchased goods, namely Energizer Battery

23 Products, primarily for personal, family, or household purposes.

24    416.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and the

25 members of the Class have been injured in their business or property by virtue of being forced to pay

26 overcharges on Energizer Battery Products. Because Defendants' anticompetitive agreement to fix the

27 price of Energizer Battery Products is ongoing and because Plaintiffs and members of the Class buy

28 Energizer Battery Products on a regular basis, there is a high probability that Plaintiffs and members

of the Class will suffer injury in the future as a result of Defendants' conduct.

417.    By reason of the foregoing, Plaintiffs and members of the Class are entitled to seek all forms of relief, including up to treble damages and reasonable attorney's fees and costs under Massachusetts General Laws ch. 93A § 9.

## COUNT XXXV
## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### MO. ANN. STAT. § 407.010, et seq.

418.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

419.    Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices, including antitrust violations such as restraints of trade and monopolization.

420.    Plaintiffs and members of the Class purchased Energizer Battery Products within the State of Missouri for personal, family, or household purposes during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

421.    Under Missouri law, indirect purchasers have standing to maintain an action under the MMPA based on the facts alleged in this Complaint. *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 669 (Mo. 2007).

422.    Defendants contracted, combined or conspired in restraint of trade or commerce in the Relevant Market within the intrastate commerce of Missouri in violation of Mo. Stat. § 407.010, et seq.

423.    Plaintiffs and members of the Class were injured with respect to purchases of Energizer Battery Products in Missouri and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

///

//

/

1
2
3

**COUNT XXXVI**
**VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES AND CONSUMER**
**PROTECTION ACT OF 1970,**
**MONT. CODE, §§ 30-14-103, et seq., AND §§ 30-14-201, et seq.**

4       424.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

5   allegation set forth in the preceding paragraphs of this Complaint.

6       425.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

7   acts or practices in violation of the Montana Unfair Trade Practices and Consumer Protection Act of

8   1970, MONT. CODE, §§ 30-14-103, *et seq.*, and 30-14-201, *et seq.*

9       426.    Defendants' unlawful conduct had the following effects: (1) price competition in the

10  Relevant Market was restrained, suppressed, and eliminated throughout Montana; (2) Energizer

11  Battery Products' prices were raised, fixed, maintained, and stabilized at artificially high levels

12  throughout Montana; (3) Plaintiffs and members of the Class were deprived of free and open

13  competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated

14  prices for  Energizer Battery Products; (5) retailers in Montana were prevented from charging a

15  competitive price for Energizer Battery Products.

16      427.    Plaintiffs and members of the Class purchased goods, namely Energizer Battery

17  Products, primarily for personal, family, or household purposes.

18      428.    During the Class Period, Defendants' illegal conduct substantially affected Montana

19  commerce and consumers.

20      429.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

21  members of the Class have been injured and are threatened with further injury. Defendants have

22  engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE,

23  §§ 30-14-103, *et seq.*, and 30-14-201, *et seq.*, and, accordingly, Plaintiffs and members of the Class

24  seek all relief available under that statute.

25
26

**COUNT XXXVII**
**VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT,**
**NEB. REV. STAT. § 59-1602, et seq.**

27      430.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

28  allegation set forth in the preceding paragraphs of this Complaint.

431.    By reason of the conduct alleged herein, Defendants have violated NEB. REV. STAT. § 59-1602, *et seq*.

432.    Under Nebraska law, indirect purchasers have standing to maintain an action under the Nebraska Consumer Protection Act based on the facts alleged in this Complaint. *See* NEB. REV. STAT. § 59-1609.

433.    Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within Nebraska.

434.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nebraska.

435.    Defendants' conduct had a direct or indirect impact upon Plaintiffs and members-of-the-Class's ability to protect themselves.

436.    Defendants' unlawful conduct substantially affected Nebraska's trade and commerce.

437.    As a direct and proximate cause of Defendants' unlawful conduct, members of the Class have been injured in their business or property and are threatened with further injury.

438.    By reason of the foregoing, members of the Class are entitled to seek all forms of relief available under NEB. REV. STAT. § 59-1614.

### COUNT XXXVIII
### VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT,
### NEV. REV. STAT. § 598.0903, et seq.

439.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

440.    By reason of the conduct alleged herein, Defendants have violated Nev. Rev. Stat. § 598.0903*, et seq*.

441.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and to substantially lessen competition.

442.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within Nevada.

443.     Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nevada.

444.     Defendants' conduct amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

445.     Defendants' unlawful conduct substantially affected Nevada's trade and commerce.

446.     Defendants' conduct was willful.

447.     As a direct and proximate cause of Defendants' unlawful conduct, the members of the Class have been injured in their business or property and are threatened with further injury.

448.     By reason of the foregoing, members of the Class are entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs, and a civil penalty of up to $5,000 per violation under NEV. REV. STAT. § 598.0993.

<div align="center">

**COUNT XXXIX**
**VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT,**
**N.H. REV. STAT. ANN. tit. XXXI, § 358-A:1, et seq.**

</div>

449.     Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

450.     By reason of the conduct alleged herein, defendants have violated N.H. REV. STAT. tit. XXXI, § 358-A:1, *et seq*.

451.     Under New Hampshire law, indirect purchasers have standing to maintain an action under the New Hampshire Consumer Protection Act based on the facts alleged in this Complaint. *See LaChance v. U.S. Smokeless Tobacco Co.*, 156 N.H. 88, 92-100 (2007).

452.     Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within New Hampshire. Defendants' unlawful conduct occurred in substantial part in New Hampshire by fixing the prices charged by retailers for Energizer Battery Products in New Hampshire.

453.     Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of New Hampshire.

454.     Defendants' conduct was willful and knowing.

1    455.    Defendants' conduct had a direct or indirect impact upon members of the Class's ability

2    to protect themselves.

3    456.    Defendants' unlawful conduct substantially affected New Hampshire's trade and

4    commerce.

5    457.    As a direct and proximate cause of Defendants' unlawful conduct, members of the

6    Class have been injured in their business or property and are threatened with further injury.

7    458.    By reason of the foregoing, members of the Class are entitled to seek all forms of relief

8    available under New Hampshire Revised Statutes §§ 358-A:10 and 358-A:10-a.

9
**COUNT XL**
**VIOLATION OF THE NEW MEXICO UNFAIR PRACTICES ACT,**
10
**N.M. STAT. ANN. § 57-12-1, et seq.**

11    459.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

12    allegation set forth in the preceding paragraphs of this Complaint.

13    460.    By reason of the conduct alleged herein, Defendants have violated N.M. STAT. § 57-

14    12-3, *et seq.*

15    461.    Defendant entered into a contract, combination, or conspiracy between two or more

16    persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part

17    of which occurred within New Mexico.

18    462.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of

19    commerce within the State of New Mexico.

20    463.    Defendants' unlawful conduct substantially affected New Mexico's trade and

21    commerce.

22    464.    Defendants' conduct constituted "unconscionable trade practices" in that such conduct,

23    *inter alia*, resulted in a gross disparity between the value received by Class members and the price

24    paid by them for Energizer Battery Products as set forth in N.M. STAT. § 57- 12-2E.

25    465.    Defendants' conduct was willful.

26    466.    As a direct and proximate cause of Defendants' unlawful conduct, members of the

27    Class have been injured in their business or property and are threatened with further injury.

28    467.    By reason of the foregoing, members of the Class are entitled to seek all forms of relief,

1    including actual damages or up to $300 per violation, whichever is greater, plus reasonable attorney's

2    fees under N.M. STAT. § 57-12-10.

3                                                          **COUNT XLI**

     **VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE**
4                  **PRACTICES ACT, N.C. GEN. STAT. § 75-1.1, et seq.**

5            468.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

6    allegation set forth in the preceding paragraphs of this Complaint.

7            469.    By reason of the conduct alleged herein, Defendants have violated N.C. Gen. Stat. § 75-

8    1.1, *et seq*. Under North Carolina law, indirect purchasers have standing to maintain an action based

9    on the facts alleged in this Complaint. *See Hyde v. Abbott Labs., Inc.*, 123 N.C. App. 572, 584 (1996).

10           470.    Defendants entered into a contract, combination, or conspiracy in restraint of, or to

11   monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within

12   North Carolina.

13           471.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of

14   commerce within the State of North Carolina.

15           472.    Defendants' trade practices are and have been immoral, unethical, unscrupulous, and

16   substantially injurious to consumers.

17           473.    Defendants' unlawful conduct substantially affected North Carolina's trade and

18   commerce.

19           474.    Defendants' conduct constitutes consumer-oriented deceptive acts or practices within

20   the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on

21   the public at large and harmed the public interest of North Carolina consumers in an honest

22   marketplace in which economic activity is conducted in a competitive manner.

23           475.    As a direct and proximate cause of Defendants' unlawful conduct, members of the Class

24   have been injured in their business or property and are threatened with further injury.

25           476.    By reason of the foregoing, members of the Class are entitled to seek all forms of relief,

26   including treble damages under N.C. GEN. STAT. § 75-16.

27   //

28   /

1

**COUNT XLII**
**VIOLATION OF THE RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT,**
**R.I. GEN. LAWS § 6-13.1-1, et seq.**

2

3      477.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

4      allegation set forth in the preceding paragraphs of this Complaint.

5      478.    By reason of the conduct alleged herein, Defendants have violated R.I. GEN. LAWS § 6-

6      13.1-1, *et seq*.

7      479.    Defendants engaged in an unfair or deceptive act or practice with the intent to injure

8      competitors and consumers through supra-competitive profits.

9      480.    Defendants entered into a contract, combination, or conspiracy between two or more

10     persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part

11     of which occurred within Rhode Island.

12     481.    Defendants' conduct was unfair or deceptive within the conduct of commerce within

13     the State of Rhode Island.

14     482.    Defendants' conduct amounted to an unfair or deceptive act or practice committed by

15     a supplier in connection with a consumer transaction.

16     483.    Defendants' unlawful conduct substantially affected Rhode Island's trade and

17     commerce.

18     484.    Defendants' conduct was willful.

19     485.    Members of the Class purchased goods, namely Energizer Battery Products, primarily

20     for personal, family, or household purposes.

21     486.    As a direct and proximate cause of Defendants' unlawful conduct, members of the Class

22     have been injured in their business or property and are threatened with further injury.

23     487.    By reason of the foregoing, members of the Class are entitled to seek all forms of relief,

24     including actual damages or $200 per violation, whichever is greater, and injunctive relief and punitive

25     damages under R.I. GEN. LAWS § 6-13.1-5.2.

26

**COUNT XLIII**
**VIOLATION OF THE SOUTH CAROLINA'S UNFAIR TRADE PRACTICES ACT,**
**S.C. CODE ANN. §§ 39-5-10, et seq.**

27

28     488.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every

1  allegation set forth in the preceding paragraphs of this Complaint.

2  489.   By reason of the conduct alleged herein, Defendants have violated S.C. CODE ANN.
3  § 39-5-10, *et seq*.

4  490.   Defendants have entered into a contract, combination, or conspiracy between two or
5  more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial
6  part of which occurred within South Carolina.

7  491.   Defendants' conduct was unfair or deceptive within the conduct of commerce within
8  the State of South Carolina.

9  492.   Defendants' conduct had a direct or indirect impact upon members of the Class's ability
10  to protect themselves.

11  493.   Defendants' unlawful conduct substantially affected South Carolina trade and
12  commerce.

13  494.   Defendants' unlawful conduct substantially harmed the public interest of the State of
14  South Carolina, as at least thousands of members of the public purchase Energizer Battery Products.

15  **COUNT XLIV**
**VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT,**
16  **UTAH CODE ANN. §§ 13-11-1, ET SEQ.**

17  495.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every
18  allegation set forth in the preceding paragraphs of this Complaint.

19  496.   By reason of the conduct alleged herein, Defendants have violated UTAH CODE ANN.
20  §§ 13-11-1, *et seq*.

21  497.   Defendants are a supplier within the meaning of UTAH CODE ANN. §§ 13-11-3.

22  498.   Defendants entered into a contract, combination, or conspiracy between two or more
23  persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part
24  of which occurred within Utah.

25  499.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of
26  commerce within the State of Utah.

27  500.   Defendants' conduct and/or practices were unconscionable and were undertaken in
28  connection with consumer transactions within the meaning of UTAH CODE ANN. §§ 13-11-3.

501.    Defendants knew or had reason to know that their conduct was unconscionable.

502.    Defendants' unlawful conduct substantially affected Utah's trade and commerce.

503.    Members of the Class purchased goods, namely Energizer Battery Products, primarily for personal, family, or household purposes.

504.    As a direct and proximate cause of Defendants' unlawful conduct, members of the Class have been injured in their business or property and are threatened with further injury.

505.    By reason of the foregoing, members of the Class are entitled to seek all forms of relief, including declaratory judgment, injunctive relief, and ancillary relief, pursuant to UTAH CODE ANN. §§ 13-11-19(5) and 13-11-20.

### COUNT XLV
### VIOLATION OF THE VERMONT CONSUMER FRAUD ACT,
### VT. STAT. ANN. TIT. 9, CH. 63 §2451, et seq.

506.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

507.    By reason of the conduct alleged herein, Defendants have violated VT. STAT. ANN. tit. 9, § 2451, *et seq.*

508.    Title 9 of the Vermont Statutes generally governs commerce and trade in Vermont. Chapter 63 thereof governs consumer protection and prohibits, *inter alia*, unfair methods competition, unfair and deceptive acts and practices, and antitrust violations such as restraints of trade and monopolization. *See* VT. STAT ANN. tit. 9, § 2453(a).

509.    Plaintiffs and members of the Class purchased Energizer Battery Products within the State of Vermont primarily for personal, family, or household purposes during the Class Period. But for Defendants' conduct set forth herein, the price of Energizer Battery Products would have been lower, in an amount to be determined at trial.

510.    Under Vermont law, indirect purchasers have standing under the antitrust provisions of the Vermont Statutes to maintain an action based on the facts alleged in this complaint. VT. STAT. ANN. TIT. 9, § 2465(b); *see also Elkins v. Microsoft Corp.*, 174 Vt. 328, 341 (2002).

511.    Defendants competed unfairly by restraining trade as set forth herein, in violation of VT. STAT. tit. 9, § 2453, *et seq.*

512.    Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the Relevant Market, a substantial part of which occurred within Vermont.

513.    Defendants' violations of Vermont law were flagrant.

514.    Defendants' conduct caused or was intended to cause unfair methods of competition within the State of Vermont.

515.    Defendants' unlawful conduct substantially affected Vermont's trade and commerce.

516.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and the members of the Class have been injured in their business or property and are threatened with further injury.

517.    Plaintiffs and members of the Class were injured with respect to purchases of Energizer Battery Products in Vermont and are entitled to all forms of relief, including actual damages, treble damages, and reasonable attorneys' fees.

## XIV.   PETITION FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, respectfully ask the Court for a judgment that:

1.    Certifies the Class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and directs that reasonable notice of this action, as provided by Fed. R. Civ. P. 23(c)(2), be given to the Class, and declares Plaintiffs as representatives of the Class;

2.    Appoints Plaintiffs and their attorneys as class representatives and class counsel, respectively;

3.    Enters judgment against Defendants, and in favor of Plaintiffs and the Class, holding Defendants liable for the antitrust violations alleged;

4.    Awards a declaratory judgment that Energizer's challenged agreement with Wal-Mart was done for illegal, anticompetitive purposes, was an unreasonable restraint of trade, and had anticompetitive effects on the Relevant Market in violation of the Sherman Act, § 1.

5.    Grants permanent injunctive relief enjoining Energizer from making sales of Energizer Battery Products contingent on the price charged by any retailer; and requiring Energizer and Wal-

Mart to take affirmative steps to dissipate the continuing effects of their prior unlawful conduct;

6. Awards Plaintiffs and the Class actual, double, treble, and exemplary damages as permitted and as sustained by reason of the antitrust violations alleged herein, plus interest in accordance with law;

7. Awards such equitable relief as is necessary to correct for the anticompetitive market effects caused by Defendants' unlawful conduct, including disgorgement, restitution, and the creation of a constructive trust;

8. Awards Plaintiff and the Class their costs of suit, including reasonable attorneys' fees as provided by law;

9. Directs such further relief as it may deem just and proper.

## XV. JURY DEMAND

Plaintiffs and members of the Class demand a jury trial on all claims so triable under Federal Rule of Civil Procedure Rule 38(b).

Dated: April 28, 2023

Respectfully submitted,

/s/Sarah Grossman-Swenson
Sarah Grossman-Swenson (SBN 259792)
Kimberley C. Weber (SBN 302894)
**McCRACKEN STEMERMAN & HOLSBERRY LLP**
475 14th Street, Suite 1200
Oakland, CA 94612
(415) 597-7200
sgs@msh.law | kweber@msh.law

*Local Counsel for Plaintiffs*

Daniel H. Silverman (*pro hac vice forthcoming*)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
769 Centre Street, Suite 207
Boston, MA 02130
Tel: (202) 408-4600
Fax: (202) 408-4699
dsilverman@cohenmilstein.com

Leonardo Chingcuanco (*pro hac vice forthcoming*)
(SBN 308640)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
lchingcuanco@cohenmilstein.com

*Counsel for Plaintiffs Don Copeland, Joseph Murray, Carol Smith, Patrick Whitney, Phillip Hague, Denise Fotis, Roxann Doriott, Bruce Mims, Lori Ably, Timothy Brown, Peter Costas, and Mike Ballard and Proposed Lead Counsel for Indirect Purchaser Class*